## SACRAMENTO SUBURBAN FRUIT LANDS CO. v. ELM et al.

Circuit Court of Appeals, Ninth Circuit.
November 23, 1928.

No. 5521.

Butler, Van Dyke & Desmond, of Sacramento, Cal., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., for appellees.

Before GILBERT, DIETRICH, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an action in damages for alleged false and fraudulent representations in the sale of certain lands in the Rio Linda district near Sacramento, Cal. The complaint alleged that plaintiffs, while residing in Minnesota prior to 1925, were ignorant of lands and their quality and value in California; that defendant knew of the ignorance of plaintiffs and knew that by reason of plaintiffs' ignorance they would be compelled to rely solely upon the statements of the defendant; that prior to November, 1925, defendant, intending to cheat plaintiffs, falsely represented that all of the property (6.87 acres) described as within the Vineland district in Sacramento county, Cal., was of the market value of $2,750; that all of the land thereof was of the value of $400 per acre and up; that all of the land was rich and fertile and capable of producing all kinds of farm crops and products; that the land was wholly free from all conditions and things injurious to the growth of fruit trees and was perfectly adapted to the raising of fruit of all kinds. It is alleged that plaintiffs believed the representations and each of them, and relied thereon, and thereafter made a contract with the defendant, agreeing to purchase the described tract; that plaintiffs performed all of the terms and conditions of the contract; that the representations at the time of making them were false and untrue; that the land was not worth more than $15 per acre, and that it would not produce any crops in commercial quantities and was not adapted to fruit growing and would not produce fruit trees or fruit, but on the contrary was unfertile and was underlaid with hardpan and clay and wholly unadapted to the growing of fruit trees of any kind; that plaintiffs, because of their reliance upon the representations made by defendant, attempted to improve the land in various ways, including planting of trees in the spring of two years, and attempted to cultivate the land so as to produce crops, but that because of the unfertility of the soil improvements did not add greatly to the value of the property; and that it was not worth in excess of $1,000.

Defendant admitted the making of the contract, but denied all allegations of fraud and misrepresentation; alleged that under the terms of the contract plaintiffs could at any time prior to June 1, 1926, elect to exchange the property described for any other tract of equal acreage owned by defendant in the Rio Linda district; that plaintiffs exercised the option and selected, in lieu of the property described in the first contract, 6.87 acres in Vineland subdivision, Sacramento county. Defendant pleaded that it performed all of the terms of the contract; admitted that the land chosen was underlaid with hardpan.

Upon trial to a jury evidence was introduced after which verdict was rendered in favor of plaintiffs. Defendant appeals.

The evidence was that the defendant owned some 12,000 acres of land in what was called the Rio Linda district. The whole tract was subdivided, one subdivision being called the Vineland tract and another the Oakdale tract. The subdivisions were cut up into five and ten acre tracts. In the Oakdale subdivision, in which plaintiffs first agreed to purchase, the land is approximately five miles east of the Vineland subdivision, in which they finally made selection. In the booklets issued by defendant and given to plaintiffs before they purchased, the entire tract owned by defendant was described as offering opportunity for combined fruit and poultry raising; the poultry to furnish an immediate income, while the fruit would produce annually from $3,500 to $4,000 upon each ten-acre tract. The land was represented as containing fertile soil with a top soil varying in depth and "variously adapted to the growing of fruit trees and vines," particularly, peaches, pears, olives, apricots, prunes, plums, figs, nectarines, cherries, grapes, and almonds. In one bit of literature it was shown that a settler upon the Rio Linda lands could expect to make $5,500 net annually. Of this sum $1,500 to $2,000 would come from the chickens and the balance might be expected from the fruit; the value of the lands being from $325 to $450 per acre. The caption upon the cover of the booklet was "Poultry Farms—Orchard Homes," and the cover is adorned with a picture of rows of fruit trees, and a hen in the foreground. Plaintiffs testified that they believed the statements made by defendant's agent and relied upon them, and upon such reliance purchased the tract of land involved; that they planted fruit trees, watered and cultivated them, but that there was not enough soil for them to thrive, as a hardpan was near the top, and the trees died. An agricultural specialist testified that he had examined the soil on plaintiffs' place and found the surface red loam underlain with an average of eight inches of clay, which was impervious and beneath which he found rock sandstone, or what is commonly known as hardpan; that the hardpan in that section goes down in excess of 25 or 30 feet; that trees would not produce on the land because there was not enough soil; that the roots could not penetrate the hardpan; and that generally the land is not capable of being used to produce agricultural crops economically on a commercial scale.

Defendant assigns as error the admission of certain evidence over its objection. A witness, not a party, testified that before purchasing land at Rio Linda in October, 1921, at St. Paul, Minn., defendant's agent told him the lands were good for growing every kind of fruit and for raising poultry, that the fruit business would be the principal one to be followed, and that a settler could get a piece of land and make it ready for planting fruit trees and go into the chicken business until the orchard began to bear. Witness said that he believed what was told him and bought lands from the defendant.

It is argued that inasmuch as the contract involved in the present action was made December 18, 1925, the transactions testified to by the witness were too remote. But as it appeared that the first representations made by the defendant company to the appellees were in August, 1924, and that as far back as 1916 the defendant company sold lands under the same system as that which prevailed in 1924, and that the booklets and literature issued in 1921 were of the same general character as those issued when plaintiffs bought, it was not improper to admit evidence of representations as to the character of the lands and soil made by the company to earlier prospective settlers. Donnelly v. Rees, 141 Cal. 62, 74 P. 433; Moody v. Peirano, 4 Cal. App. 411, 88 P. 380; Hoxie v. Home Ins. Co., 32 Conn. 21, 85 Am. Dec. 240.

An objection to the introduction of one of the descriptive booklets issued by defendant in 1921 was based upon the ground that when the literature was issued defendant company had much more land unsold than it had in 1925, when the literature which was given to plaintiffs was issued. Again, as much of the substance of the matter published in the 1921 booklet is repeated in the later booklet, there was no error in admitting the evidence. In arriving at the motive of a person alleged to have had a fraudulent purpose in respect to a particular transaction, such as the sale to plaintiffs, it is often proper to receive evidence of a number of similar transactions effected in the same way by the same persons with like results. There is no definite rule requiring that such other transactions must be contemporaneous. The facts of each case must guide the trial court in the exercise of its discretion. Naturally, the closer the several other transactions are to the one being tested, the stronger becomes the inference of the purpose which controlled the particular sale being inquired into.

The contention that the evidence was not sufficient to sustain the verdict and judgment requires no detailed examination, for the reason that defendant made no motion for an instructed verdict in its favor; nor did it object in any way to the action of the court in submitting the issues to the jury. Under that situation this court ordinarily, will not review the sufficiency of the evidence to support the verdict. Hartford Life Ins. Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496; Pennsylvania Casualty Co. v. Whiteway (C. C. A. 9) 210 F. 782; Landsberg v. S. F. & P. S. S. Co. (C. C. A. 9) 288 F. 561; Feinberg v. United States (C. C. A. 8) 2 F.(2d) 955; American Petroleum Co. v. M. P. R. Co. (C. C. A.) 25 F.(2d) 441; Steil v. Holland (C. C. A. 9) 3 F.(2d) 776; Oswego Township v. Travelers' Ins. Co. (C. C. A.) 70 F. 225.

The judgment is affirmed.