**STRIKA v. NETHERLANDS MINISTRY OF TRAFFIC, Directorate General of Shipping.**

No. 59, Docket 21762.

United States Court of Appeals Second Circuit.

Argued Nov. 3, 1950.

Decided Nov. 29, 1950.

Sylvia Miller, Chester A. Hahn, New York City, for plaintiff.

R. V. Spell, Geo. A. Garvey, Burlingham, Veeder, Clark & Hupper, John P. Smith, all of New York City (George J. Conway, James I. McGuire, New York City, of counsel), for defendant-appellant.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

This cause comes before us upon appeals by both Strika, the plaintiff, and the Netherlands Ministry of Traffic, the defendant, from a judgment in favor of the plaintiff, a foreman longshoreman, for 90 per cent of damages assessed in his favor, as an award for personal injuries. The plaintiff had commenced one action against the Holland American Line and another against the Rotterdam Lloyd Steamship Company, which eventually, by a series of changes in parties defendant and in the pleadings, were resolved into a single action against the present defendant. Both parties agree that the defendant was the owner of the ship, the failure of whose tackle caused the plaintiff's injuries, although title and possession had passed to it only on the afternoon of the day before the accident happened. The complaint alleged negligence on the part of the defendant in the conduct of the operation, and also that the tackle used was unseaworthy; and the court left to the jury seven questions under Rule 49, which they answered as follows:

(1) The defendant furnished the tackle which failed.

(2) It was not suitable for the purpose.

(3) Its unsuitability caused the injury.

(4) The defendant had no reason to know that it was unsuitable.

(5) The damages are $75,000.

(6) The plaintiff's fault contributed to his injury.

(7) The proportion of his fault is ten percent.

The judge accepted these answers and dismissed the complaint, so far as it depended upon negligence; but he entered judgment for $67,500 upon the allegations of the unseaworthiness of the tackle. The

only questions which we find it necessary to decide are: (1) whether it was wrong to dismiss the complaint so far as it was based upon negligence; (2) whether, assuming that the verdict was right that the ship's tackle was not suitable for the purpose, the plaintiff may recover, when he was injured, not on the ship, but on the dock alongside of which she lay; (3) the plaintiff's contributory negligence.

To an understanding of these questions some outline of the facts is necessary. The plaintiff was employed by the Jarka Company, a corporation which had contracted with the United States, the previous owner of the ship, to lade her as she lay alongside a pier on the New Jersey side of the Hudson River. When the plaintiff was leaving work the next day at about 3 P.M. he was told to replace upon its proper hatch a "pontoon" hatch cover which lay on the dock alongside. To do this it was necessary to lift the "pontoon" by the ship's winches, booms and falls, and the injury happened after it had been lifted a short distance from the floor of the dock, at which moment it dropped and caught the plaintiff's leg, causing injuries which made necessary amputation below the knee. The "pontoon" was a heavy single piece of metal, weighing about a ton and used to cover part of the hatchway; it had been placed on the dock that morning, and to lift it back into place it was rigged to the hook of one of the ship's falls by two "bridles." Each "bridle" consisted of two lengths of wire cable, each length having a hook at one end, and the other end being fastened to a single common ring. Each hook was passed into a "slot" at one corner of the "pontoon," and the common ring was passed into the hook at the end of the fall. In this way each "bridle" could lift the "pontoon" at two of its corners, and two "bridles" could lift it at all four corners. Instead of making the two rings fast to each other, so as in effect to make a single "bridle" with four lengths of wire, the rings were left separate on the hook; and in consequence, after the winch had lifted the "pontoon" a short distance from the dock, it tilted, the two rings separated and one of them slipped out of the hook, dropping one end of the "pontoon."

The plaintiff's position—in addition to his charge of negligence—is that two "bridles," instead of one, were unsuitable for the purpose, and made the ship's gear *pro tanto* unseaworthy, and so the jury found. Both "bridles" belonged to the ship; but other "bridles" were available which could have been used, and which had a single ring with four lengths of wire. These concededly would have been suitable, and the defendant asserts that their presence made the ship seaworthy, even if they were not used. In answer we need only cite Mahnich v. Southern S. S. Co.[1] Moreover, there was testimony, some of it coming from the defendant's witnesses, that it was not an approved method to rig two separate "bridles" upon the hook, unless the rings were fastened together. That testimony was enough to support the second answer.

As we have said, the first question is whether the answer of the jury shall stand that the defendant was not guilty of negligence; and that depends upon whether the evidence of the ship's negligence was so one-sided that the judge should have directed a verdict in favor of the plaintiff. That is, however, not before us, because the plaintiff did not ask for a direction on the issue and therefore may not raise it on appeal.[2] We come, therefore, to the second question: whether a longshoreman injured ashore by the unseaworthiness of the ship's gear has an action for indemnity against the ship owner. In O'Donnell v. Great Lakes Dredge & Dock Co.,[3] the Supreme Court held that a seaman, injured ashore by the owner's negligence, had an action-

1. 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561.

2. Hartford Life & Annuity Ins. Co. v. Unsell, 144 U.S. 439, 451, 12 S.Ct. 671, 36 L.Ed. 496; Hansen v. Boyd, 161 U.S. 397, 402, 16 S.Ct. 571, 40 L.Ed. 746; Harris v. Moreland Motor Truck Co., 9 Cir., 279 F. 543, 546; Sacramento Suburban Fruit Lands Co. v. Elm, 9 Cir., 29 F.2d 233, 235; Century Indemnity Co. v. Shakespeare, 10 Cir., 74 F.2d 392, 394; Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923, 924.

3. 318 U.S. 36, 63 S.Ct. 488, 490, 87 L.Ed. 596.

able claim under § 33 of the Jones Act.[4] It interpreted the phrase, "in the course of his employment", as extending beyond his work on the ship, and it supported the power by Congress to deal with transactions ashore, not only as part of its power to regulate interstate commerce, but to modify substantive maritime law, "at least with respect to those matters which traditionally have been within the cognizance of admiralty courts either because they are events occurring on navigable waters * * * or because they are the subject matter of maritime contracts or relate to maritime services", 318 U.S. at page 41, 63 S.Ct. at page 491. It adduced as an instance of jurisdiction depending upon "maritime contracts" or "maritime services," the seaman's right to maintenance and cure for injuries suffered ashore, which "must be taken as an incident to the status of the seaman in the employment of his ship"; a status which Congress has power "to modify," 318 U.S. at page 42, 63 S.Ct. at page 492. The Jones Act, therefore, did "no more than supplement the remedy of maintenance and cure * * * by giving * * * the indemnity which the maritime law awarded to a seaman injured in consequence of the unseaworthiness of the vessel or its tackle", 318 U.S. at page 43, 63 S.Ct. at page 492. Nevertheless, the Court reserved the case of a longshoreman injured in similar circumstances.

That situation arose three years later in Swanson v. Marra Brothers, Inc.,[5] in which a longshoreman sued his employer under the Jones Act for injuries ashore. The Court recognized that he was a "seaman" within the Act, having so held twice before;[6] and it did not intimate that, had there been no Longshoremen's and Harbor Workers' Compensation Act,[7] the same reasoning which had supported a "seaman's" recovery in O'Donnell v. Great Lakes Dredge and Dock Co., supra,[8] would not have supported a longshoreman's. It denied recovery only because of the Compensation Act; it held that, although compensation was limited to injuries suffered on "navigable waters," the release granted the employer as a consideration for that compensation must be understood to cover all injuries for which the employer would have been liable under federal law. On the same day the Court decided the case of Seas Shipping Co. v. Sieracki,[9] in which it held that a longshoreman aboard a ship might recover for injuries caused by her unseaworthiness, although the owner had not been negligent and the Jones Act did not therefore apply. The majority opinion distinguished Swanson v. Marra Brothers, Inc., supra,[10] because the Longshoremen's and Harbor Workers Act released from liability only employers, leaving untouched liabilities of third persons. As for the "obligation" arising from the ship's unseaworthiness, the Court recognized that an action upon it would not sound in contract because a longshoreman had no contract with the ship; but it held that the "obligation" even to a seaman does not sound in contract only, and need not rest upon any implied term of the contract of service. "Consent," in the sense of a promise that the ship is seaworthy, is not "the ultimate basis of the liability where the seaman hired by the vessel does the work. It is only the source of the relation which furnishes the occasion for the liability, attached by law to performance of the service, to come into play. Not the owner's consent to liability, but his consent to performance of the service defines its boundary. That this is given by contract with the worker's employer rather than with the worker himself does not defeat the responsibility", 328 U.S. at page 96, 66 S.Ct. at page 878, 90 L.Ed. 1099. It held that The Osceola[11] imposed the "obligation," not as a term implied in the contract, but because

4. § 688, Title 46, U.S.C.A.

5. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

6. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Uravic v. F. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312.

7. § 901 et seq., Title 33, U.S.C.

8. 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596.

9. 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

10. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

11. 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

it is just to import it into the legal relations arising out of the service itself; and the same considerations which made it proper to import it in favor of seamen extend to longshoremen.

█ It would follow from that analysis that the breach of the "obligation" to furnish a seaworthy ship is a tort; and that is a result consonant with the historical attitude towards breaches of warranty, which until 1778 had to be sued in tort,[12] and which may still be so treated if the distinction is important.[13] It is true that a warranty, whether express or implied, is treated as if it were an assurance by the warrantor to the warrantee that he may rely upon the truth of the fact warranted, and in the case of express warranties it would be difficult in principle to treat that assurance as other than itself a promise. However, implied warranties, although they are consensual in the sense that they presuppose that the parties have entered into some sort of contract, are not promises by the warrantor that the fact warranted is true; they are "obligations" imposed *in invitum* as a consequence of making the contract regardless of the warrantor's intent. Hence it is only by a fiction that we call them promises at all in the sense that express warranties are promises.

█ From this the defendant argues that since an action upon such an implied warranty is only a tort, the maritime law can have no jurisdiction over a breach of it occurring upon land; that being, of course, an accepted constitutional limitation upon maritime law. We should have found this a serious obstacle, were it not for O'Donnell v. Great Lakes Dredge & Dock Co., supra,[14] and the *ratio decidendi* of Swanson v. Marra Brothers, Inc., supra;[15] but those decisions appear to us to

settle it that such a tort, arising as it does out of a maritime "status" or "relation", is cognizable by the maritime law whether it arises on sea or on land. For it seems to us to follow, if Congress has power to impose liabilities in favor of seamen for lapses of care on shore, that Congress at least would have power to impose a similar liability when the lapse is in furnishing a seaworthy ship. It is true that Congress has not intervened as to seaworthiness; yet there is no more reason to circumscribe more narrowly the duty, which The Osceola, supra,[16] established as part of the maritime law, than the Constitution circumscribes the power of Congress, for both in the end are based upon the same provision.[17] Moreover, we find confirmation for this in the "obligation" of "maintenance and cure" of a seaman injured on shore, for that is concededly quite as entirely the creature of the maritime law as the "obligation" to furnish a seaworthy ship. For these reasons, although we have been unable to find a decision holding that a seaman, injured ashore by unseaworthy ship's gear, can recover, we have no doubt that he could; and, if a seaman can, we see no reason to question the ability of a longshoreman also to recover, for that follows from the reasoning of Seas Shipping Co. v. Sieracki, supra,[18] especially when it is read with the opinion in Swanson v. Marra Brothers, Inc., supra,[19] Public Law 695 of June 19, 1948, 46 U.S.C.A. § 740, has now probably laid all such doubts, but we think that it was not necessary in order to support a recovery in this particular situation.

Finally, what we have said about the jury's answer to the question of the defendant's negligence applies equally to their answer to the question of the plaintiff's contributory negligence. The sufficiency of

12. Stuart v. Wilkins, 1 Dougl. 18.

13. Shippen v. Bowen, 122 U.S. 575, 7 S. Ct. 1283, 30 L.Ed. 1172; The Fred Smartley, 4 Cir., 108 F.2d 603, 606; Metropolitan Coal Co. v. Howard, 2 Cir., 155 F.2d 780, 784; The Soerstad, D.C., 257 F. 130; Williston on Contracts, § 970.

14. 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596.

15. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

16. 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

17. Article III, § 2.

18. 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

19. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

the evidence to support the answer is not before us.

Judgment affirmed.

SWAN, Circuit Judge (dissenting).

The decision in Seas Shipping Co. v. Sieracki, 128 U.S. 85, 66 S.Ct. 872, 90 L. Ed. 1099, "created a new right in maritime workers, not members of the crew of a vessel, which has not hitherto been recognized by the maritime law or by any statute."[1] Whether the right extends to injuries incurred by a stevedore while working on shore was expressly left open by the majority opinion.[2] If the new right is to be so extended, the Supreme Court, not we, should, in my opinion, be the court to make the extension. I think the judgment should be reversed and the complaint dismissed.

---

1. The quotation is from the dissenting opinion, 328 U.S. at page 103, 66 S.Ct. at page 881, 90 L.Ed. 1099.

2. 328 U.S. at page 99, 66 S.Ct. at page 879, 90 L.Ed. 1099, note 17.