JERRY RAIA, Respondent, v. GRACE LINE, INC., Appellant.

*Per Curiam.* The judgment is reversed and a new trial ordered, with costs to the appellant to abide the event.

1. The verdict of the jury is against the overwhelming weight of the credible evidence.

2. The court erred in charging the jury, in substance, that the contributory negligence of the plaintiff, if found, would not in any way operate to reduce the amount of his recovery. The defendant was entitled to a charge that the contributory negligence of the plaintiff might operate to reduce his damages proportionately. It is true that contributory negligence was improperly pleaded as a complete rather than as a partial defense or in mitigation of damages. However, it was made clear, before the case was submitted to the jury and in the request to charge, that the defendant sought to invoke the rule under the maritime law that the damages suffered by the plaintiff might be reduced or mitigated if and to the extent that the jury found he had been guilty of contributory negligence.

In *Seas Shipping Co.* v. *Sieracki* (328 U. S. 85), the court extended to longshoremen employed by an independent stevedoring contractor the same warranty of seaworthiness which theretofore had been applied to crew members. The court held that the obligation was essentially a species of liability without fault and was neither contractural in nature nor limited by conceptions of negligence; that for purposes of the liability a stevedore is a seaman because he is doing a seaman's work and incurring a seaman's hazards and is entitled to a seaman's traditional protection. Although the question of contributory negligence was not involved in that case, the court indicated that in a suit by a seaman based upon seaworthiness, the contributory negligence of the seaman would result in mitigating or reducing his damages (p. 94, n. 11; see, also, *Socony-Vacuum*

*Co.* v. *Smith,* 305 U. S. 424; *The H. A. Scandrett,* 87 F. 2d 708, 711). In *Strika* v. *Netherlands Ministry of Traffic* (185 F. 2d 555), which was based on the *Sieracki* case (*supra*), a longshoreman injured ashore was allowed recovery against the shipowner for breach of warranty of seaworthiness of the ship's tackle but his verdict was reduced 10% because of his contributory negligence. (See 64 Harv. L. Rev. 996.) The *Sieracki* case extended the warranty of seaworthiness to longshoremen. The learned trial court below went one step further and held that a longshoreman was completely immune from the results of his own contributory negligence. No seaman has ever enjoyed such an immunity and there is no justification, in reason or in authority, for granting it to a longshoreman.

3. The court erred in refusing to allow the defendant the opportunity to explain by competent evidence the entry in a log book (received in evidence) of a survey made three days after the accident.

4. Although, as has been stated, we believe that the verdict of the jury was against the overwhelming weight of the credible evidence, we are of the opinion that the complaint should not be dismissed. There was evidence, sufficient to warrant submission to a jury, that the condition of either or both of the winches involved in the accident contributed to its occurrence.

VAN VOORHIS, J. (dissenting in part). I concur in the majority opinion except that I think that instead of granting a new trial, the complaint should be dismissed. At the time of this accident, plaintiff was employed by Huron Stevedoring Corporation, which is liable to him for workmen's compensation, but he has failed, as it seems to me, to establish liability on the part of defendant for his personal injuries. Such liability could only be based upon unseaworthiness of the vessel when it was taken over by the stevedoring corporation for the purpose of unloading. The only unseaworthiness claimed is an alleged defect in the forward starboard winch. All four of plaintiff's fellow employees testified that both forward winches on the vessel were in good operating condition. He himself testified that the port winch was all right, but that the starboard winch had misbehaved by jerking the loads for several hours before the accident. He testified to no occasion when this winch had started to operate while the controls were turned off. An expert witness, basing inference upon inference, testified from the fact that the steamship had just completed a seventeen-day voyage from Valparaiso, South America, that salt had encrusted contact points of the switch operating the starboard winch, and that this had caused that winch to act abnormally while in operation. He did not examine the winch, and his conclusion concerning its condition was hypothetical. Neither did he testify that this hypothetical condition would cause this winch to start up while it was turned off.

A controlling reason on account of which the complaint should be dismissed is that, assuming that the defects claimed existed in the starboard winch, the evidence, including that offered by plaintiff, demonstrates that such defects could not have caused this accident. A statement of further facts is necessary.

The vessel being unloaded was moored with her port side toward the dock. Bags of coffee were being unloaded through the bow hatchway in the center of the ship. The cable to which the load was attached ran through a pulley located over the center of the hatch on a boom which remained fastened in that position. The load was lifted from the hold in this fashion by the port winch. After this winch had raised the load high enough to be above the main deck and clear of the hatchway, a second winch (starboard winch) operated to pull the load to port over to the dock. This was done by means of a cable

which ran from the starboard winch across the port side of the vessel, and then passed through a pulley attached to the roof of the pier. The free end of this cable was attached to the load by a hook, and remained loose until the port winch had raised the load out of the hatch. After the starboard winch had hauled the load over the port side of the vessel toward the pier in a position beneath the pulley hanging from the roof, the port winch slacked off and the load was then lowered exclusively by means of the starboard winch until it came to rest upon a platform or skid extending out from the side of the pier. All of the witnesses testified that this lowering operation was handled by the starboard winch alone. , Concerning this there is no dispute. Plaintiff stood upon the platform or skid to fasten a cable leading from the dock to the load, after it had come to rest upon the skid. In order to fasten this line, he mounted the load, at which moment it was jerked off from the skid so that he fell to the deck. He testified that he landed on the hatch covers, which were near the middle of the forward deck. At that time the side of the ship lay, according to plaintiff's testimony, about thirty feet away from and slightly below the elevation of the skid.

Sollecito, who was then operating the port winch, testified that he inadvertently moved the lever which jerked the load toward the vessel while plaintiff was riding it, thus precipitating him to the deck. Sollecito was a witness for plaintiff, and his testimony is not contradicted. It is true that another stevedore who had previously operated the port winch testified that his winch was not involved in the accident, but the testimony of this other stevedore lacks probative force since he testified that he had been relieved from operating the port winch before the accident, and did not see it happen. Neither did he testify that he saw any of the events which led up to the accident. He said he was in the toilet when the accident occurred. Since it is admitted that the port winch was not defective, and that defendant could not be liable for negligence of the winch operator, there can be no recovery if Sollecito's testimony is true. Even if Sollecito's uncontradicted testimony for the plaintiff could be rejected, plaintiff must fail since there is no evidence, only speculation, that the accident happened in any different manner. The circumstantial evidence establishes that the accident could not have occurred as it did except as a result of the operation of the port winch. Plaintiff testified that he was jerked upward about twelve feet and swung toward the ship. That could not have been done by the starboard winch. The starboard winch was connected with the cable running through a pulley on the roof of the pier directly above the platform or skid on which the load was resting when plaintiff mounted it. It could only pull him upward, not in the direction of the ship. Even if we are to disregard the circumstance that no defect was claimed, even in the starboard winch, which would have caused it suddenly to start operating without human intervention when the load was resting on the skid, the starboard winch could only have pulled the load upward toward the pulley on the roof of the pier from which the cable was hanging; it could not possibly have drawn the load thirty feet from the pier laterally to the side of the vessel, and then have thrown plaintiff still farther in that direction to where the hatch covers were near the center line of the ship. This tragic result could only have been due to the operation of the port winch, which is not claimed to have been out of order.

The complaint should be dismissed, with costs.

Glennon, Callahan and Shientag, JJ., concur in *Per Curiam* opinion; Van Voorhis, J., dissents in part in an opinion in which Peck, P. J., concurs.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.