Marvin W. **GEBHARD**, Plaintiff,

v.

S. S. **HAWAIIAN LEGISLATOR**, her engine, tackle, gear, appurtenances, Matson Navigation Company, a corporation, Matson Terminals, Inc., a corporation, Defendants.

No. 66–1653–R.

United States District Court
C. D. California.
May 10, 1968.

Wallace & Wallace, by A. W. Wallace, Los Angeles, Cal., for plaintiff.

Sikes, Pinney & Matthew, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER

REAL, District Judge.

This matter now comes before the Court upon defendants' Motion To Dismiss Action On Ground That Court Lacks Jurisdiction of Subject Matter.

## BACKGROUND

Plaintiff is a member of the Marine Clerks and Longshoremen Union. On July 31, 1966, he was assigned by his union to work as a marine clerk at Matson Terminals Berth Number 200-A, Wilmington, California. As a marine clerk, plaintiff's duty was to make sure that the proper container of cargo was loaded aboard a ship in a pre-determined sequence. Specifically he advised the drivers of straddle carriers the number of vans the driver was to bring to the crane for loading aboard ship.

On July 31, 1966, plaintiff was performing this duty in connection with the loading of the vessel S.S. HAWAIIAN LEGISLATOR, owned and operated by defendant Matson Navigation Company.

A straddle carrier is a vehicle used in carrying large container vans loaded with cargo from its place of origin on the dock to a place where a crane stationed either dockside or aboard ship picks up the container and places it aboard the vessel. The straddle carrier lowers a frame work to the top of the van container and engages grappling hooks in holes in the van container to lift the container from the ground so it can be moved. The operator sits atop the straddle carrier and operates it from that position.

On July 31, 1966, at approximately 9:00 P.M., plaintiff was engaged in his duties as a marine clerk at Berth 200-A and was walking from his duty station near the crane on the pier toward a straddle carrier to give the operator instructions for bringing van containers

to the crane when he was struck from behind by another straddle carrier resulting in the injury alleged in his complaint.

At the time of his injury plaintiff was employed by defendant Matson Terminals, Inc. The straddle carriers were owned and operated by defendant Matson Terminals, Inc.

Plaintiff brings his action pursuant to 46 U.S.C. § 740 et seq. alleging unseaworthiness of the vessel and negligence on the part of the ship owner thus bringing the action within the admiralty jurisdiction of this Court. Defendants bring their motion to dismiss contending that plaintiff's injuries, occurred on shore and not involved with the vessel.

### JURISDICTION UNDER THE ADMIRALTY EXTENSION ACT, 46 U.S.C. § 740 et seq.

Title 46 U.S.C. § 740 provides in its pertinent part:

" § 740. *Extension of admiralty and maritime jurisdiction; libel in rem or in personam; exclusive remedy; waiting period.*

The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

In any such case suit may be brought in rem or in personam according to the principles of law and the rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water * * *."

Prior to passage of § 740 as the Admiralty Extension Act in 1948, it was settled law that the admiralty jurisdiction delegated to the federal judiciary by Article 3, Section 2 of the Constitution [1]

did not extend to torts of a vessel which were consummated ashore. The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1866); United States v. Matson Nav. Co., 201 F.2d 610, 613–614 (9th Cir. 1953).

In enacting § 740, Congress provided a remedy in admiralty for "ship to shore" damage previously cognizable only under the common law in state courts in the absence of diversity of citizenship jurisdiction on the law side of the federal courts.[2] Although primarily concerned with property damage caused by and to vessels to and from shoreside activities, Congress included personal injury. The nature of the liability, i. e. negligence and/or unseaworthiness was left unresolved.

In imposing liability upon a vessel owner to a longshoreman injured ashore through the unseaworthiness of the ship's tackle, the court in Strika v. Netherlands Ministry of Traffic, 185 F. 2d 555 (2d Cir. 1950) rejected the applicability of 46 U.S.C. § 740. The court says at page 558:

"It is true that Congress has not intervened as to seaworthiness * * *. [A]lthough we have been unable to find a decision holding that a seaman, injured ashore by unseaworthy ship's gear, can recover, we have no doubt that he could; and, if a seaman can, we see no reason to question the ability of a longshoreman also to recover * * *. Public Law 695 of June 19, 1948, 46 U.S.C. § 740, has now probably laid all such doubts, but we think that *it was not necessary in order to support a recovery in this particular situation.*" (emphasis supplied)

Although stating jurisdiction as diversity of citizenship, the Court of Appeals for the Ninth Circuit in Pope and

1. Article 3, Section 2, clause 1 of the United States Constitution provides in its pertinent part:
    "Section 2. Jurisdiction of Courts.
    Section 2. The judicial Power shall extend * * *; —to all Cases of admiralty and maritime Jurisdiction;"

2. 1948 U.S.Code Congressional Service, pp. 1898–1904.

Talbot, Inc. v. Cordray, 258 F.2d 214 (9th Cir. 1958) adopted the reasoning of *Strika,* supra, to approve an instruction to the jury upon the doctrine of unseaworthiness for a shoreside injury to a longshoreman without reference to the Admiralty Extension Act.

■ Accepting findings of the trial court upon negligence, the Supreme Court in Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L. Ed.2d 297, makes clear that the Admiralty Extension Act codified as 46 U.S.C. § 740 applies only to extend jurisdiction to shoreside "damage or injury, to person or property" upon a cause of action in negligence. The court says at page 209–210, 83 S.Ct. at page 1188:

> "Respondent contends that it is not liable, at least in admiralty, because the impact of its alleged lack of care or unseaworthiness was felt on the pier rather than aboard ship. Whatever validity this proposition may have had until 1948, the passage of the Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 U.S.C. § 740, swept it away when it made vessels on navigable water liable for damage or injury 'notwithstanding that such damage or injury be done or consummated on land.' Respondent and the carrier *amici curiae* would have the statute limited to injuries actually caused by the physical agency of the vessel or a particular part of it—such as when the ship rams a bridge or when its defective winch drops some cargo onto a longshoreman. Cf. Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (C.A. 2d Cir.); Hagans v. Farrell Lines, Inc., 237 F.2d 477 (C.A.3d Cir.). Nothing in the legislative history supports so restrictive an interpretation of the statutory language. There is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts 'committed' by a corporation and by its employees."

To reach that conclusion we must read the above quoted language together with footnote 3 which says:

> "3. The question of whether the warranty of seaworthiness extends to longshoremen on the dock is considered, infra, at p. 213–214 [83 S.Ct. at p. 1190]."

■ Reviewing the case law and adopting the *ratio decidendi* of Strika, supra; Cordray, supra; O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and Robillard v. A. L. Burbank & Co., Ltd., 186 F.Supp. 193 (S.D.N.Y.1960), the court in *Gutierrez* concluded:

> "We agree with this reading of the case law and hold that the duty to provide a seaworthy ship and gear, including cargo containers, applies to longshoremen unloading the ship whether they are standing aboard ship or on the pier."

Plaintiff alleges in one cause of action what is in fact two causes of action— one for negligence that must depend upon (a) diversity of citizenship, or (b) 46 U.S.C. § 740, and a second cause of action for unseaworthiness depending upon the maritime jurisdiction of this court, United States Constitution, Article III, Sec. 2, cl. 1; 28 U.S.C. § 1333.

To invoke the jurisdiction of this court in his cause of action for negligence the plaintiff alleges or agrees to facts which if proven, would show negligence on the part of defendant Matson Terminals, Inc. and its servants, agents or employees. No facts are alleged or agreed upon which would sustain a cause of action for negligence against defendants S.S. Hawaiian Legislator or Matson Navigation Company. Clearly lacking diversity of citizenship, the cause of action for negligence must be dismissed unless there is some theory upon which plaintiff can support his injury as being "caused by a vessel" within the meaning of 46 U.S.C. § 740.

In analyzing the complaint, plaintiff does allege "that both named defendants are owned substantially by the same shareholders and operate as a single economic unit in interstate commerce." Apparently plaintiff is here alleging some alter ego theory and asks the court to impose upon defendants S.S. Hawaiian Legislator and Matson Navigation Company vicariously the liability of Matson Terminals, Inc. to invoke its admiralty jurisdiction.

■ The equitable doctrine of alter ego, or more accurately disregard of a corporate entity, is invoked by courts to *avoid or prevent fraud or injustice.* Uniformly it has been used only to provide *recovery* where the maintenance of a separate entity protected by the laws of separate corporate existence would result in a fraud or injustice nullifying effective relief for an aggrieved plaintiff.

■ The liability which plaintiff seeks to impose upon defendants herein for negligence is one limited only to Matson Terminals, Inc., and plaintiff has state remedies available against that defendant. To apply the equitable doctrine of alter ego to bootstrap the jurisdiction of this court to hear such a controversy is neither realistic in principle nor required to avoid or prevent a fraud or injustice.

## SEAWORTHINESS AND MARITIME JURISDICTION PURSUANT TO UNITED STATES CONSTITUTION

Article III, Sec. 2, cl. 1 and 28 U.S.C. § 1333.

Judge Learned Hand in Strika v. Netherlands Ministry of Traffic, supra, characterizes the jurisdiction of shipboard or shoreside injuries resulting from a breach of the warranty of seaworthiness as arising out of " * * * a maritime 'status' or 'relation'."

■ Judge Hand is not completely accurate in such a characterization. An analysis of the cases dealing with the subject matter of the obligation of an owner to furnish a seaworthy vessel would indicate that two elements are essential to invoke the maritime jurisdiction in an action for damages resulting from injuries caused by the unseaworthy condition of a vessel—(1) the maritime "status" or "relation" and (2) a defect in the vessel or its appurtenant appliances and equipment.

### (a) STATUS OF PLAINTIFF

Plaintiff herein alleges that he is "a marine clerk longshoreman." In supporting affidavits plaintiff describes his duties as follows:

"8. It was the duty of Marvin W. Gebhard to make sure that the proper container was loaded aboard the ship in the predetermined sequence. In the performance of this duty, Marvin was required to advise the drivers of these huge straddle carriers of the number of the van which each operator was to bring to the crane next."

In Seas Shipping Co. v. Sieracki, supra, the Supreme Court first considered the status of a longshoreman in relation to the unseaworthy character of a vessel. In extending the protection theretofore reserved to seaman to longshoreman the court said at page 99 of 328 U.S., at page 879 of 66 S.Ct.:

"It is that for injuries incurred while working on board the ship in navigable waters the stevedore is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner. For these purposes he is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards."

In Gutierrez v. Waterman S. S. Corp., supra, 373 U.S. at 215, 83 S.Ct. at 1191, the Supreme Court extended the doctrine of seaworthiness to injuries suffered by longshoremen on shore in this clear language:

"We * * * hold that the duty to provide a seaworthy ship and gear, including cargo containers, applies to longshoremen unloading the ship

whether they are standing aboard ship or on the pier."

There is however no magic wand to provide the element of "status" or "relation" in the use of the term "longshoreman." The "status" or "relation" can arise only where the individual seeking to invoke liability for unseaworthiness is engaged in " * * * the 'type of work' traditionally done by seamen, and were thus related to the ship in the same way as seamen 'who had been or who were about to go on a voyage' * * *." United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 617, 79 S.Ct. 517, 519, 3 L.Ed.2d 541. See also Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143.

Applying such a test to the description of the duties of plaintiff herein, it is apparent that his duties were not "the 'type of work' traditionally done by seamen."

### (b) CAUSE OF THE INJURY OF PLAINTIFF

Assuming, *arguendo*, that plaintiff was within the class of persons qualifying for "work traditionally done by seamen," the question of the maritime jurisdiction of this court requires analysis of the second element set forth above, i. e., injury caused by a defect in the vessel or its appurtenant appliances and equipment. A defect in the vessel includes an inadequate crew. Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955).

It is in the area of ship's appurtenances and equipment that the litigation has been most plentiful and most confusing. The decided cases have considered and mixed three areas of concern—the status of the individual injured—the traditional work of seamen —and the loading and unloading process.

In Strika v. Netherlands Ministry of Traffic, supra, plaintiff, a foreman longshoreman, was injured on shore when a hatch cover being lifted by the ship's tackle was dropped on his leg. It was found that the "bridles" attached to the ship's falls were unsuitable and therefore rendered the vessel unseaworthy.

Hagans v. Farrell Lines, Inc., 237 F.2d 477 (3d Cir. 1956), upheld a judgment for injuries to a longshoreman working on shore when he was struck by cargo being unloaded with a defective winch aboard the vessel. Although the action was founded on diversity of citizenship, the court extended the warranty of seaworthiness to a shoreside longshoreman to impose liability upon the shipowner.

DiSalvo v. Cunard S. S. Co., 171 F. Supp. 813 (S.D.N.Y.1959), treated a passenger baggage chute as "ship's equipment" to impose liability for a condition of unseaworthiness injury to a foreman-rigger rigging the baggage chute for discharge of the vessel's baggage.

In Litwinowicz v. Weyerhaeuser S. S. Company, 179 F.Supp. 812 (E.D.Penn. 1959), the court imposed liability upon a ship owner for injury to longshoremen working in a railroad gondola car on the pier loading steel beams aboard ship. The injury was caused by use of an improper "Baltimore dog" attached to a hook at the end of the ship's cable which ran down from head of the ship's boom.

In Robillard v. A. L. Burbank & Co., Ltd., supra, tried on the law side of the court on the basis of diversity of citizenship applied the doctrine of unseaworthiness to impose liability upon a ship owner for shoreside injuries to a longshoreman when he was struck by lumber knocked off the ship during the unloading using the ship's winches.

The analysis of the cases cited by counsel or found by the court indicate that the doctrine of unseaworthiness extends to any individual who is performing "work traditionally done by seamen" *and* who is injured by some instrumentality of the vessel. Absent unseaworthiness of some instrumentality of the vessel the traditional recovery for seaman's injuries has been limited to wages, maintenance and cure, i. e., recovery based upon status alone. The confusion arises

in equating status to injury involving some instrumentality of the vessel. If any single rule can be distilled it would appear that in the loading or unloading process the doctrine of unseaworthiness extends only to equipment which is actually used to load on or into the vessel or unload from the vessel itself. In other words it applies only to the ship's tackle or its modern equivalents.

The liability in the present case is best determined by its analogy to Partenweederei, MS Belgrano v. Weigel, 299 F.2d 897 (9th Cir. 1962), modified on other grounds, 302 F.2d 730, cert. denied, 371 U.S. 830, 83 S.Ct. 49, 9 L.Ed. 2d 67, where recovery was denied to a longshoreman injured by the ship's boom while he was engaged "on the dock in the moving of the ship's tackle to its first place of rest." *Partenweederei,* supra, compels the determination that plaintiff has not and could not allege a cause of action either within the general admiralty jurisdiction of the court (unseaworthiness) or within the Admiralty Extension Act (negligence). There being no diversity of citizenship the complaint of the plaintiff is dismissed.