**NEW YORK, NEW HAVEN AND HART-FORD RAILROAD COMPANY,**
Defendant, Appellant,

v.

**Mary L. Donnelly HENAGAN, Plaintiff,**
Appellee.

**No. 5511.**

United States Court of Appeals
First Circuit.

Heard Oct. 6, 1959.

Decided Nov. 27, 1959.

Noel W. Deering, Boston, Mass., with whom David W. Walsh, Boston, Mass., was on brief, for appellant.

James W. Kelleher, Boston, Mass., with whom James R. DeGiacomo, Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

On October 11, 1954, the plaintiff-appellee was employed by the defendant-appellant as a grill-car waitress on its regularly scheduled passenger train which left Boston at 7 A.M. bound for New York. As the train, proceeding at 12 to 15 miles per hour, entered the Providence, Rhode Island, railroad station about an hour later, the engineer made an emergency application of the brakes in an unsuccessful attempt to avoid running over a woman who stepped from the station platform onto the tracks in front of the locomotive, obviously and concededly for the purpose of committing suicide.

At the time the brakes were applied the plaintiff was standing at the service counter at the forward end of the grill-car waiting for food from the kitchen. She was thrown against the counter by the sudden stop of the train but she did not fall, although some of her fellow employees in the car lost their footing, and silverware, dishes and kitchen utensils in the car were thrown to the floor. The plaintiff immediately gave evidence of pain, principally in her shoulders and neck, and became hysterical. She was removed from the train at Providence and, with another grill-car employee who was injured, sent back to Boston and there hospitalized. No serious physical injury has ever been found by the medical men

who have examined her. There is no doubt, however, that since the event of October 11, 1954, she has suffered more or less acutely from paranoid psychosis, described by her medical expert at the trial as " * * * a mental disease characterized by suspiciousness, by the presence of ideas of guilt and reference to one's self of events not connected with one's self." To quote from the same source, her belief since 1954 or 1955 has been " * * * that she herself was personally responsible for the death of the woman who fell or jumped in front of the train on which she worked in 1954, just as though she were herself a murderer," and that " * * * there was going to be a murder trial at which she herself was to be the defendant." There is ample evidence, and indeed it appears to be conceded, that because of her mental condition the plaintiff has been unable to work or care for her family since the accident and that the prospects of her eventual recovery are not very bright.

In due course the plaintiff brought suit against the defendant in the court below under the Federal Employers' Liability Act,[1] and a trial by jury resulted in a verdict for the plaintiff on which the court immediately entered judgment. The defendant within the time limited by the rules moved for judgment notwithstanding the verdict and also for a new trial. Hearing was held on these motions at the conclusion of which the court announced:

"I am denying both motions. On the defendant's Motion for Directed Verdict I have endorsed this: 'This motion was presented to the Court before the case went to the jury. The Judge waved aside the motion and said it was "denied" but the denial is not meant to be final but merely meant the Judge refused to act upon it until after the jury returned its verdict. The jury having returned its verdict this Judge would grant the motion were he free to do so. But obedient to what he under-

stands to be the views of a majority of the Supreme Court of the United States and solely in response to such command this Court denies the motion. Wyzanski, J., January 13, 1959.'

"On the Motion for Judgment Notwithstanding the Verdict and Motion for New Trial, I have endorsed this as follows: 'This Motion would be granted by this Court were it free to do so, but this Court construes the opinions and judgment of the Supreme Court of the United States as giving him no option but to deny the motion. Wyzanski, J., January 13, 1959.' "

The court then said in elaborating its views:

"In my opinion there was no evidence whatsoever of negligence on the part of the engineer. I cannot read the record as a whole in a way to find any evidence of negligence. But I know that my method of reading the record is different from that of a majority of the Supreme Court of the United States as exhibited in past cases, and I hope I am a lawful judge, and I recognize the limits of my authority, whether appellate judges do or not."

Furthermore, the court indicated that in its opinion the plaintiff had failed to establish causation. It said:

"With respect to the aspect of causation I also believe that the plaintiff failed to bear the burden of proof. I do not believe that the condition which the plaintiff had even on the plaintiff's medical testimony can legitimately be said to have resulted in whole or in part from the incident which occurred at the Providence Station on the 11th of October, 1954.

* * * * * *

"There is no sensible medical explanation which I have ever heard that makes the onset of insanity or mental incompetence legally the re-

---

**l.** 35 Stat. 65, as amended, 36 Stat. 291, 53 Stat. 1401, 45 U.S.C. § 51 et seq.

sult of a situation such as existed in the Providence Station, and I regard the jury as having reached a preposterous conclusion."

█ █ The defendant below did not appeal from the denial of its motions for judgment notwithstanding the verdict and for a new trial. It did, however, seasonably appeal from the judgment entered on the verdict prior to the filing of its motions. Having moved at the appropriate time for a directed verdict, it can here challenge the sufficiency of the evidence to take the plaintiff's case to the jury. And, having moved within the time fixed in the Rules for judgment notwithstanding the verdict, it can properly ask this court for remand to the court below for the entry of judgment in its favor, not merely for a new trial. Cone v. West Virginia Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, and cases cited.

In Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 507, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 the Court said with reference to the Federal Employers' Liability Act: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." And then the Court said: "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death."

█ The test is simply and easily stated. The trouble comes in applying it, for what may be entirely reasonable to one person may be utterly unreasonable to another. The Supreme Court of the United States, of course, has the final say in these cases as to what is or is not a reasonable conclusion to draw from the evidence. And we recognize that in recent years the Supreme Court has allowed juries great latitude in deciding what may or may not be a reasonable conclusion to draw from the evidence in cases under the Federal Employers' Liability Act. We do not, however, read the Court's recent decisions as depriving trial judges in cases like this of their historic function of exercising a preliminary judgment on the facts to determine whether the plaintiff has shown enough to warrant a fair-minded jury in returning a verdict in his favor. New York, New Haven & Hartford Railroad Co. v. Dox, 1 Cir., 1957, 249 F.2d 572, 573, 574. We think trial judges still have the duty, in these cases as in others, to screen the evidence to ascertain whether it is enough to persuade reasonable minds that some negligence of the employer contributed in some way or another to the plaintiff-employee's injury. And we think the various courts of appeal still have a function to perform in reviewing the decisions of the district courts in their respective circuits on this matter. See the Dox case supra.

But of course, these functions, trial and appellate, are to be performed with an eye to the trend indicated by recent decisions of the Supreme Court. With this trend in mind, we turn to consideration of the evidence.

Trains from Boston to New York approach the Providence railroad station from the east on a gradual curve to the right. The platform for the accommodation of passengers, which is only a matter of inches above the top of the rails, was on the right of the train as it came into the station on track No. 3. The right hand rail of track No. 3 (we refer to right and left from the point of view of the engineer of the train, who was in his seat on the right hand side of the cab near the front of the diesel locomotive), is about two feet from the edge of the platform. The rails are 4 feet 8½ inchs apart and about two feet to the left of the left hand rail there is a picket fence separating track No. 3 from the next track to the south, track No. 1.

The engineer testified that he first noticed the suicide as she stepped over the rail nearer the platform and that she was

then 35 or 40 feet away. He said that at first he thought she had gone onto the track to pick up some object lying between the rails and did not realize that she either could not or did not intend to step back into safety until she had proceeded in the direction of the fence to the vicinity of the further rail when she turned toward the locomotive and started to squat or kneel down and that thereupon he immediately made an emergency application of the brakes bringing the train to a stop in about 80 feet which was the shortest distance in which it could be stopped at 12 to 15 miles per hour on dry rails with brakes in proper order, as they were at the time. The suicide's body was picked up under the wheels of the train about 68 feet back of the front of the locomotive.

Plaintiff's counsel does not suggest that if the engineer first saw the suicide when she was only 35 or 40 feet away he ought to have realized that he could not then stop the train in season to avoid running over her and so in the exercise of due care toward passengers and fellow employees on the train he should have made a gentler application of the brakes. Nor does he argue that an emergency application of the brakes was negligence in and of itself. See Herdman v. Pennsylvania R. R. Co., 1957, 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508. His contention in a nut shell is that it could reasonably be found on the evidence in the record that in the exercise of due care the engineer should have seen the would-be suicide and sized up the situation sooner than he did and that had he done so, he could have brought the train to a stop without running over her.

Counsel for the plaintiff makes a rather involved argument in the attempt to show that on the evidence in the record the jury could reasonably infer that the woman was in the engineer's sight on the track an "obvious suicide" when the train was some 160 to 180 feet away so that, had the engineer acted as promptly as he should, he could have brought the train to a stop without running over the suicide and even without the necessity of an emergency application of the brakes. On analysis the argument impresses us as fallacious. We see no need to discuss it, however, for we think that the trend of recent decisions of the Supreme Court indicates that the jury was entitled to return a verdict for the plaintiff on the engineer's testimony standing alone.

■■ It is true that no eyewitness to the tragedy, and there were several, placed the front of the locomotive more than 40 feet away, about one half the distance in which the train could possibly be stopped, when the suicide stepped off the platform onto the track. But the engineer said that he watched the suicide walk across the tracks toward the fence believing that she could and would get off the tracks and that he did not apply the brakes until she turned toward the locomotive and started to squat or kneel. From this it could well be inferred that the engineer did not apply the brakes as soon as he should. Indeed, from the testimony that the train could be stopped in 80 feet and the testimony that the suicide's body was picked up 68 feet back of the front of the locomotive, it would appear that although the engineer first saw the suicide when she was 40 feet away he did not apply the brakes until she was only 12 feet in front of the locomotive. It is true that the engineer's testimony only tends to indicate that he might not have applied the brakes as soon as due care required and has no tendency to show by a balance of probabilities, or that it was more probable than not, that an emergency application of the brakes when the suicide first stepped on the tracks could have brought the train to a stop soon enough to avoid hitting her. But recent decisions of the Supreme Court in cases under the Federal Employers' Liability Act, indeed, the applicable rule quoted above, seem to us clearly to indicate abandonment of the traditional rule that plaintiffs have the burden of persuasion in actions for negligence, at least insofar as actions for negligence under the Act are concerned, and that only the barest possibility

158

of causation is enough to make out a case for the jury. Thus, although we can discern from the engineer's testimony only the faintest scintilla of evidence to suggest the inference of any causal connection between the engineer's possibly negligent failure to apply the brakes sooner than he did and running down the suicide, nevertheless, as we read recent decisions of the Supreme Court, we feel that the plaintiff has shown enough to take her case to the jury.[2]

As to the causal connection between the plaintiff's mental condition and the running down of the suicide, it is enough to say that the plaintiff's medical expert so testified.

▇ The question whether the court below might properly have granted the defendant a new trial in the hope that another jury might return a verdict more in keeping with the great weight of the evidence is not before us, for the defendant did not appeal from the denial of its motion for a new trial.

Judgment will be entered affirming the judgment of the District Court.

---

2. See, for instance, Harris v. Pennsylvania R. Co., 80 S.Ct. 22.