**WATERMAN STEAMSHIP CORP.,**
Respondent, Appellant,

v.

**Federico Marin GUTIERREZ, Libelant,**
Appellee.

No. 5887.

United States Court of Appeals
First Circuit.

April 11, 1962.

Antonio M. Bird, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for appellant.

Harvey B. Nachman, San Juan, P. R., with whom Nachman & Feldstein, San Juan, P. R., was on brief, for appellee.

Before MAGRUDER*, ALDRICH and SMITH*, Circuit Judges.

ALDRICH, Circuit Judge.

This is a libel by a longshoreman for personal injuries sustained on a dock at which respondent's vessel was unloading, allegedly by reason of "improper storage of cargo on said dock." In addition, there were general allegations of unseaworthiness of the vessel and of negligence of its master, officers and crew. The district court made findings in libelant's favor as to unseaworthiness and negligence and assessed damages. It rejected a defense of laches. Respondent appeals.

* Sitting by assignment.

The accident occurred on October 21, 1956. Libelant was in the employ of a stevedore unloading respondent's vessel pursuant to contract. The first notice respondent received of the claim and, for all that appears, of the injury [1] was when suit was brought on January 9, 1959. By this date more than twice the period of the analogous statute of limitations had elapsed. The court found, "While working on the dock libelant slipped on [some] beans, twisted his torso and fell upon his buttocks. The injuries sustained by libelant were proximately caused by this unseaworthiness [2] of the vessel, the failure to furnish libelant with a safe place to work and by the negligence of the respondent." With respect to laches the court found that libelant had shown a sufficient excuse by the fact that he consulted counsel within the statutory period, and concluded that respondent was not prejudiced by the delay because the witnesses remained available and respondent had its own "records indicating the cargo damage."

The first question is the responsibility for the beans. The court found that many of the bean bags were defective; that coopers were employed in sewing them up; that nonetheless beans were spilled from the drafts as they were being swung ashore. "On one occasion, according to the records produced by respondent and admitted into evidence, a bag broke open in mid-air spilling its contents all over the dock. This event occurred while a draft from Hold No. 1 was in mid-air and still attached to the vessel. Hold No. 1 is immediately adjacent to No. 2 forward. Beans scattered about the surface of the pier caused a dangerous condition for the longshoreman. The cargo being discharged was defective and un-seaworthy. The ship owner was negligent in permitting the broken and weakened bags to be discharged, when it knew or should have known that injury was likely to result to persons in the service of the ship who had to work on and about the spilled beans. The condition on the pier was caused by the respondent's unseaworthy cargo and its lack of care. In permitting this condition to remain existent, the respondent failed to furnish libelant with a safe place to work."

■ The quoted portion of the court's opinion contains several errors. In the first place, the respondent's records do not show that the bag broke open in mid-air, but show that it fell from mid-air, and broke when it hit the deck.[3] Secondly, the bag fell, and beans were spilled, whether from there or anywhere else, by no conduct in which respondent was shown to have participated. Cf. Robillard v. A. L. Burbank & Co., D.C.S.D. N.Y.1960, 186 F.Supp. 193, 197. And it is undisputed, with respect to "permitting this condition to remain existent" on the pier, that respondent had neither control of nor even a right to control that locus. The court's findings as to respondent's negligence cannot stand.

■ There remains the finding of unseaworthiness of the cargo. One speaks of unseaworthy cargo really in terms of result: rather, it is the unsafe condition, created by the cargo, which is felt to be a violation of some absolute duty of the shipowner. We recognize, of course, that a shipowner's duty is not to be evaded by calling a man a longshoreman and placing him in someone else's employ. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. But while labels cannot avoid liability, they should not be used to create it. This

---

1. Even libelant's employer had no prior notice of the basis of the present claim. Libelant told the State Insurance Fund not that he slipped, as now alleged, but that he fell because he was carried by the sling due to improper action of the winchman.

2. What was meant by "this unseaworthiness" will be later discussed.

3. If there could be said to be any ambiguity in the record (which we doubt) it is clearly resolved by reading the entries as to similar occurrences at other hatches.

is not a case of a defective piece of ship's equipment, or of a dangerous condition aboard the ship. Nor is it a case of a claimant whose work carries him both on and off the vessel. At best, lading, which was not part of the ship, which did not make the ship unsafe, and which had left the ship, is being used to impose absolute liability upon the shipowner for a condition caused by the lading to a shore worker. Some may feel this gangway has been crossed. See, e. g., Hagans v. Ellerman & Bucknall S.S. Co., D.C.E.D.Pa., 1961, 196 F.Supp. 593; Fitzmaurice v. Calmar S.S. Corp., D.C. E.D.Pa., 1961, 198 F.Supp. 304. But it seems to us that to extend such protection disregards the whole origin and purpose of the doctrine of unseaworthiness.[4] True, such a worker may be broadly argued to be in the service of the ship. But not even in a technical sense was he on or about to go "on a voyage." Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143. His dangers were not the same. Ibid. We see no difference to a land employee in source, cause, risk, or effect between beans spilled on a dock, or on a trucking platform, or on a warehouse floor in Denver. The very fact that unseaworthiness obligations are "awesome," Kent v. Shell Oil Co., 5 Cir., 1961, 286 F.2d 746, 752, suggests that they should not be handled with prodigality. We are unwilling to recognize one here.

A recent case somewhat close on the facts is Partenweederei MS Belgrano v. Weigel, 9 Cir., 1962, 299 F.2d 897. There libelant was a dock worker engaged in driving a tractor handling lumber on the dock which was about to be loaded onto respondent's vessel. He was struck by a defective ship's boom. The court found that libelant was not performing traditional ship's work within the scope of the obligation of seaworthiness. While the court noted a distinction between cargo not yet connected with the ship's loading gear and cargo actually being loaded, it is in common with us in recognizing limits in this area to principles of absolute liability. In a way the facts were more favorable to libelant than in the case at bar because it was the ship's gear that was defective and not merely cargo previously aboard.

There is a more specific difficulty. The court overruled the defense of laches because it found that libelant had a valid excuse for the delay and because respondent was not prejudiced. The only suggested excuse was that libelant consulted counsel within the statutory period. This has never been regarded as extenuation. Wilson v. Northwest Marine Iron Works, 9 Cir., 1954, 212 F.2d 510; Marshall v. International Mercantile Marine Co., 2 Cir., 1930, 39 F.2d 551; McGrath v. Panama R. Co., 5 Cir., 1924, 298 F. 303. Assuming that absence of excuse is not fatal if there has been no actual prejudice, but cf. Taylor v. Crain, 3 Cir., 1952, 195 F.2d 163, we think that such lack of prejudice has been shown only in part. The court's first basis, that the witnesses were still available, was not equivalent to an opportunity to examine them at an earlier date. Cf. Redman v. United States 2 Cir., 1949, 176 F.2d 713, Redman v. United Fruit Co., 2 Cir., 1950, 185 F.2d 553. It was demonstrated that the memories of these witnesses had become impaired. While they testified to loose beans falling from the drafts, they also testified similarly as to rice and feed. Yet defendant's records, of which the court quite properly made a

---

4. Singularly enough, the doctrine of absolute tort liability for injuries ashore, to the exent that there have been cases, seems to exist solely for the benefit of longshoremen. Whether those decisions represent the independent views of the courts concerned, or are merely thought to be required by those of the Supreme Court, may be problematical. Cf. Robillard v. A. L. Burbank & Co., supra. But we know that on at least one occasion we ourselves have erroneously exaggerated those views. New York, N. H. & H. R. Co. v. Henagan, 1 Cir., 1959, 272 F.2d 153, rev'd, 1960, 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183.

point in another connection, showed that no rice or feed was discharged until after the accident. And while the records did in fact show spilling from the drafts, they showed none near the hatch opposite which libelant was working. The testimony as to the defective-bag source of the beans on which libelant was found to have slipped is highly questionable. We think as to this portion of the claim it was error to find that respondent was not prejudiced by the delay.

There is a similar weakness with respect to the evidentiary proof. Libelant cannot recover for beans that spilled from the drafts without some affirmative showing that they were the ones upon which he slipped. With an admitted substantial source of a large quantity of beans—the dropped bag—it seems to us that any finding that libelant fell, instead, on beans which spilled from defective bags on the drafts would be entirely speculative.[5] For either of these reasons we could not recognize a finding that libelant's fall was so caused.

■ On the other hand, as to the dropped bag, we quite agree that since respondent's own records showed it, respondent was not prejudiced. This, however, does not help libelant. Even if it could be found that libelant slipped on beans from that source, there was no evidence that this bag was defective, or that any defect caused it to drop. For all that appears there may have been improper operation by the winchman. His negligence, as already stated, was not the responsibility of the respondent. Accordingly, there is no basis for supporting a finding for libelant on any theory. Respondent's motion for judgment should have been allowed.

Judgment will be entered vacating the decree of the District Court, and remanding the case to that Court with direction to dismiss the libel.

---

5. Strictly, it must be observed that the court's attributing libelant's fall to beans from defective bags appears to be based

primarily on its mistaken finding that a bag broke in mid-air.