James HAGANS

v.

ELLERMAN AND BUCKNALL STEAM-
SHIP COMPANY, Ltd.

v.

ATLANTIC AND GULF STEVEDORES,
INC.

Civ. A. No. 24578.

United States District Court
E. D. Pennsylvania.

Sept. 11, 1961.

Freedman, Landy & Lorry, by Milton
M. Borowsky, Philadelphia, Pa., for
plaintiff.

Krusen, Evans & Byrne, by Mark D.
Alspach, Philadelphia, Pa., for Ellerman.

Davis, Marshall & Crumlish, by Fran-
cis E. Marshall, Philadelphia, Pa., for
Atlantic.

WOOD, District Judge.

At the outset, it is advisable to point
out that all counsel for the respective
parties agreed that the factual situation
in this case was one of first impression.
Insofar as the legal consequences arising

therefrom are concerned, no specific case in point was available in this district or elsewhere. The facts are as follows:

On July 1, 1957, James Hagans, the plaintiff, was one of twenty-two longshoremen employed to unload the "S. S. City of London," which was moored on the south side of Pier 38 in the City of Philadelphia. He was an employee of Atlantic and Gulf Stevedores, Inc. (hereinafter referred to as "Atlantic") which had contracted with Ellerman and Bucknall Steamship Company, Ltd. (hereinafter referred to as "Ellerman"), the owner of the ship, to perform the unloading operation.

The cargo involved consisted of bags of sand, each weighing about one hundred pounds. Eleven of the longshoremen were in the hold of the ship and their duty was to place twenty to twenty-five bags of sand in a sling which, by means of a winch, lifted the bags from the hold up and over the side of the ship. At this stage, the load of sand was lowered onto a four-wheel flat truck on the apron of the pier. Another longshoreman operating what was termed as a jitney would hook on to the load truck and pull it through a large door in the side of the pier building which abutted on the apron and transport it to a point on the north wall of the building about one hundred feet away from the door. The jitney at that point would be removed from the truck and return to pick up another load truck on the pier. In the meantime, eight longshoremen, of which the plaintiff Hagans was one, were engaged in unloading the bags of sand from the flat truck and piling them within a few feet of where the flat truck was left. Hagans slipped and fell removing the bags of sand from the truck and piling them within the pier, as aforesaid. The accident occurred at least one hundred feet within and beyond the point on the pier where the sand was picked up by the jitney.

It is obvious that an immediate legal question arose as to whether the operation being performed by Hagans at this point within the pier building was so far removed from the actual unloading operation of the ship as to bring it within the maritime law and whether Hagans was entitled to the protection of the doctrine of unseaworthiness.

We first consider the argument of defendant Ellerman. It states vigorously that Hagans' injuries were consummated on land on the theory that the pier is an extension of the land and beyond the admiralty and maritime jurisdiction, citing in support thereof Cleveland Terminal & V. R. Co. v. Cleveland S. S. Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508, and State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933, as well as various text books. However, it is our opinion that whether or not this plaintiff is entitled to the benefit of the doctrine depends not on the locality of the accident but on what he was doing at the time of the alleged injuries and the character of the work in which he was engaged. In other words, was he in the ship's service? It is stated in 3 L.Ed.2d, in the annotation following Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413:

"It is firmly established that, in determining whether one other than a seaman is entitled to benefits of the doctrine of seaworthiness, a single factor is of controlling importance, and this factor is the character of the work done by the person in question. If it is work which is in the 'ship's service' * * * then the seaworthiness doctrine is applicable * * * and it has also been held that, assuming that the 'ship's service' test is met by the work done by the injured person, it is immaterial to the applicability of the seaworthiness doctrine that the injury was sustained, not aboard this ship but on shore." 3 L.Ed.2d at p. 1767.

Having the above theory in mind, the Court submitted to the jury this special interrogatory:

"1. Was the plaintiff performing a service of the ship in connec-

tion with the discharge of cargo from the S. S. City of London at the time he suffered his injury?"

We have carefully examined the testimony and our charge explaining that interrogatory and find, first, that there was ample evidence to support a finding that plaintiff Hagans was performing a part of the ship's service and, second, that the jury was adequately instructed on what constituted "ship's service."

From the brief statement of the facts above, it seems apparent to us that the unloading from the hold to the sling to the winch to the flat truck and thence to the locating point within the pier, although one hundred feet from the door of the pier, was one continuous operation and was a part of those duties customarily performed by the ship's crew. Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413. Furthermore, admittedly, Hagans was one of a group of twenty-two men, part of which worked in the hold, part on the deck and part within the pier, but all employed by the same stevedoring company to accomplish the same final result.

Since we have thus concluded, it is not necessary to pass on the question of whether or not the issue here involved comes within the provisions of the Extension of Admiralty Jurisdiction Act, Section 740 of Title 46 of the United States Code Annotated, as urged by the plaintiff.

■ Defendant next argues that the liability here resulted not from the stowage of the cargo but the condition of the cargo after it was discharged. But counsel for defendant admits, as stated in his brief at p. 13, "that if cargo is stowed aboard ship in an improper manner, that can render the ship itself unseaworthy and liable to a longshoreman injured aboard by reason of the unseaworthy condition of the ship created by the improper stowage." The facts in this case made it abundantly clear that the bags of sand stowed in the hold of the vessel were broken and leaking; that they were in that condition when they were placed aboard the sling; that sand continued to seep from the sling as it was hoisted from the hold and across the deck of the vessel; and that the seepage continued over the apron of the pier to the place where Hagans was working and at the point where he was injured there was a sprinkling of sand on the floor. There was also ample evidence from which the jury could conclude that the injury which he suffered was caused when he slipped on that sand. We cannot give any effect to defendant's argument that this event happened as a result of the condition of the cargo after it had been discharged. The sand being on the pier had a direct causal relation to the improper stowage. In other words, due to improper stowage the ship was unseaworthy and due to the unseaworthiness, Hagans was injured and that created liability which cannot be avoided.

Defendant next argues that all that it is required to do is furnish a reasonably safe place for plaintiff to work. As we have previously stated, Hagans was, as found by the jury, in the ship's service, the place where he was working was unsafe because of a condition caused by the ship itself, and, therefore, the ship is as liable as though Hagans had slipped on the deck itself. Furthermore, there was convincing evidence in this case that the manner of discharging the cargo was improper. That in itself could create and did create an unsafe place to work. Beard v. Ellerman Lines, Ltd., 3 Cir., 1961, 289 F.2d 201.

■ In his alternative motion, defendant charges the Court with error in permitting testimony where a witness was allowed to state that an expert surveyor sometime after the accident stated in his report that he would "definitely recommend the use of a stronger bag" (NT 231). The report referred to was not admitted in evidence as a document and, of course, not permitted to go out with the jury. The notation in the report, referred to by defendant, was an isolated statement which, in the opinion of the Court, had no bearing whatever

on the ultimate result. If it was error, it was completely harmless. The issue was not as to the strength of the bags but as to the manner in which the bags were stowed in the hold and the condition of the stow itself, including the seepage of sand over the bags and in the area from which they were being removed.

■ Finally, defendant raises one other question to which we will briefly refer. It was apparently his desire to cross-examine plaintiff relative to a recovery which he had in another accident sometime previously and as to Hagans' statement that he terminated treatment at the Pennsylvania Hospital because he "couldn't afford the money." The Court did curtail cross-examination because it felt that defendant's counsel was going into completely irrelevant matters. In fact, defendant has given us no authority for its position that we should have permitted it to bring into this case the history of another case at some prior date and to go into extensive cross-examination as to whether a man was able to pay a hospital bill or not, none of which would have in the slightest affected the issues as to liability or damages.

Therefore, as to defendant Ellerman, an Order will be entered consistent with the above.

Turning to the motion of Atlantic, they have interposed the same general arguments as the defendant Ellerman, but, in addition, the following which require some further discussion:

At the outset of this trial, Atlantic sought a severance of the action of defendant Ellerman against them from the original cause. The motion was made and denied. As we understand it, this Court with the approval of the United States Court of Appeals for the Third Circuit has left this matter of severance to the discretion of the presiding judge. For a full discussion of the matter see Weitort v. A. H. Bull & Company v. Jarka Corporation of Phila., D.C.1961, 192 F.Supp. 165, Opinion of Van Dusen, J. We conclude that there are cases in which a severance might be desirable but there appeared, in the opinion of the Court, to be no merit to such a conclusion in this case.

■ At the beginning of the trial, plaintiff asked the Court to rule that the third-party defendant Atlantic be precluded from cross-examining his witnesses. Atlantic had not filed an answer to the original complaint and was not an adverse party to plaintiff on the record, although, admittedly, there did appear during the trial some adversity as to the facts which later developed. We ruled in favor of the plaintiff on that point, but informed counsel that we would listen carefully to the testimony and that if at any stage during the trial any witness called by the plaintiff in our opinion stated facts which were prejudicial to the third-party defendant, we would allow cross-examination or if, on the other hand, counsel for the defendant failed to fully cross-examine, we would permit the third-party defendant to do so. We have re-examined the record and cannot find that on the basis of the testimony of all the witnesses for plaintiff, except one, that the third-party defendant was prejudiced by our ruling. As to that one witness, who was an expert called to testify on the proper or improper method of unloading broken bags of sand, the third-party defendant was given full opportunity of cross-examination. We gather from the third-party defendant's brief and argument that he does not question our ruling so much on the testimony elicited from plaintiff's witnesses on direct-examination but the inferences arising from the original defendant's questions on cross-examination. We are unable to agree with him on this point. A careful review of the record does not disclose to us anything which he could have raised on cross-examination which would have enhanced his position in the slightest degree. He overlooks the prejudice to plaintiff of repetitive cross-examination and the general principle that "the district judge has a wide discretion in regulating trial procedure." Walker v. Loop Fish & Oyster Co., 5 Cir., 1954,

211 F.2d 777, 781. Were we convinced in the slightest degree that the failure to cross-examine the witnesses other than the expert prejudiced the position of the third-party defendant, we would readily grant a new trial, but such is not the case.

■ The third-party defendant further argues that the relationship between it and plaintiff is bound by the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq., which limits its obligations to the amount payable by the stevedoring company, Atlantic. But under the facts of this case they are clearly governed by Ryan Stevedoring Company v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. In this regard, an interrogatory was submitted to the jury as follows:

"(a) Do you find that the Atlantic & Gulf Stevedores, Inc., performed their services in connection with the discharge of the ship's cargo in a reasonably safe and workmanlike manner?

"(b) If your answer is no, was their failure to perform the work in a reasonably safe and workmanlike manner a substantial factor in causing the plaintiff's injuries?"

The jury answered (a) "no" and (b) "yes." The obligation of indemnity is maritime in nature and state law is inapplicable. We are, therefore, bound by the findings of the jury and cannot accept the argument of the third-party defendant. An appropriate Order will be entered.

One further motion must be disposed of.

Subsequent to the argument and filing of briefs defendant Ellerman filed a "protective motion of defendant Ellerman & Bucknall Steamship Co., Ltd. with respect to judgment in its favor and against third-party defendant Atlantic & Gulf Stevedores, Inc." In this motion it states: "In the event this Honorable Court should decide that the judgment entered March 22, 1961 in favor of plaintiff and against defendant should stand then defendant moves this Honorable Court to supplement the judgment entered in its favor and against third-party defendant, Atlantic & Gulf Stevedores, Inc. on March 22, 1961, to include as items of recovery in favor of the defendant its necessary costs, fees and expenses, including attorneys' fees, incurred in the defense of the within matter as they shall finally appear." We are not convinced that the defendant should recover its attorneys' fees from the third-party defendant as a matter of course in all cases of this nature. However, we are willing to hear argument on this point. Therefore, we will await further action of counsel before we rule on this motion.

For the foregoing reasons we enter the following Order:

### Order.

And now, to wit, this 11th day of September, 1961, the following motions of the defendant Ellerman & Bucknall Steamship Company, Ltd. are denied:

1. Motion for judgment notwithstanding the special verdict;

2. Motion for judgment in accordance with defendant's motion for a directed verdict;

3. Motion to vacate the judgment; and

4. Motion for a new trial on the issue of liability between the plaintiff and the defendant. The defendant's motion to supplement the judgment in favor of the defendant and against the third-party defendant so as to include costs, expenses, and attorneys' fees will be held under advisement.

The following motions of the third-party defendant Atlantic & Gulf Stevedores, Inc. are denied:

1. Motion for judgment notwithstanding the special verdict;

2. Motion for a directed verdict;

3. Motion for a new trial with regard to the third-party action; and

4. Motion to vacate the judgment entered in favor of the defendant and against the third-party defendant.