425 F.2d 1303
 Marvin W. GEBHARD, Plaintiff-Appellant,
v.
S.S. HAWAIIAN LEGISLATOR, her engine, tackle, gear, appurtenances, Matson Navigation Company, a corporation, Matson Terminals, Inc., a corporation, Respondents-Appellees.
 No. 22880.
 United States Court of Appeals, Ninth Circuit.
 April 9, 1970.
 
 COPYRIGHT MATERIAL OMITTED A. W. Wallace (argued), Wallace & Wallace, Los Angeles, Cal., for plaintiff-appellant.
 Robert Sikes (argued), Sikes, Pinney & Matthew, North Hollywood, Cal., for respondents-appellees.
 Before HUFSTEDLER, WRIGHT and KILKENNY, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This action is by a marine clerk for injuries sustained on a pier in connection with the loading of the S.S. Hawaiian Legislator. He alleges negligence and unseaworthiness, and joins as defendants the ship, her owner, and the stevedoring company, his employer. The District Court dismissed the cause for want of admiralty jurisdiction, there being no diversity, and plaintiff appeals.
 
 
 2
 On the evening of July 13, 1966, the S.S. Hawaiian Legislator was loading a cargo of container vans at Wilmington, California. The vans were brought to the pier by truck, and transferred from the front of the pier to the water's edge by straddle carriers — large vehicles equipped with grappling hooks that fit into holes in the containers. A crane then hoisted the vans aboard ship.
 
 
 3
 Plaintiff's job in the loading operation was to direct the straddle carriers into position beneath the crane. He was injured when one of the carriers ran into him and crushed his leg. It is alleged that neither the pier nor the straddle carriers had lights, that the carriers were so designed as to block the driver's view of pedestrians, and that the lack of these safety precautions was the proximate cause of plaintiff's injury.
 
 
 4
 In the view we take of the case, it will be necessary to consider separately the claim for negligence against the ship and her owner, the claim for negligence against the stevedore company, and the claim for unseaworthiness.[1]
 
 
 5
 Judge KILKENNY and I join in Parts I and II of the opinion which follows, reversing the judgment below as to the claims of negligence. Judges HUFSTEDLER and KILKENNY join in Part III, which reverses the judgment below as to the claim for unseaworthiness.
 
 I.
 
 6
 As to the negligence claim against the ship and her owner, there would clearly have been no jurisdiction prior to the Extension of Admiralty Jurisdiction Act of 1948. For the admiral's tort jurisdiction was traditionally "bounded by locality," De Lovio v. Boit, 7 Fed.Cas.pp. 418, 444, No. 3,776 (C.C.D. Mass.1815) (Story, J.), reaching only to cases where the injury occurred on navigable waters. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); The Plymouth, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125 (1866). And piers were considered for jurisdictional purposes as extensions of the land. Swanson v. Marra Bros., Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928).
 
 
 7
 The Extension Act broadened admiralty jurisdiction to include injuries "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740. The question then is whether these injuries were "caused by a vessel."
 
 
 8
 We think that as to the causes of action sounding in negligence, the matter has been settled by the Supreme Court's decision in Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1962). That case held that a court of admiralty had jurisdiction under 46 U.S.C. § 740 over a claim arising out of a shipowner's negligence in allowing beans to be unloaded in defective bagging. The Court rejected the idea that the Extension Act was limited to injuries "actually caused by the physical agency of the vessel or a particular part of it — * * *. There is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts `committed' by a corporation and by its employees." 373 U.S. at 209-210, 83 S.Ct. at 1188.
 
 
 9
 We see no substantial difference for jurisdictional purposes between an allegation that the shipowner was negligent in allowing beans to be unloaded by means of dangerously defective bagging, and one that he was negligent in allowing vans to be loaded by means of dangerously defective equipment. On remand the defenses of lack of actual or constructive knowledge, unforeseeability, and perhaps independent contractor, see Albanese v. N.V. Nederl. Amerik Stoomv. Maats., 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965), will still be open. Morales v. City of Galveston, 370 U.S. 165, 167-168, 82 S.Ct. 1226, 8 L.Ed. 2d 412 (1962); United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 618-619, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). The District Court has jurisdiction to decide them.
 
 II.
 
 10
 The claim for negligence against the stevedoring company presents somewhat different issues. The difficulty is that the allegations that would support jurisdiction are not the same as those that would support recovery. Jurisdiction must depend on the contention that the injury was "caused by a vessel" — i. e., in the circumstances of this case, that the shipowner was negligent, see Part I, supra. But recovery turns on the allegation that the stevedoring company was negligent. Hence the question is whether the Extension Act, in giving jurisdiction over claims for injury "caused by a vessel," is restricted to jurisdiction over suits against the persons responsible for the vessel's torts, or whether it extends to all claims arising out of a vessel-caused injury, regardless of the parties sought to be charged.
 
 
 11
 We think the latter is the proper construction. The Act by its terms applies to "all cases" where the injury is "caused by a vessel on navigable water." It imposes no other requirements. On its face, therefore, the Act seems to base jurisdiction not on the character of the parties, as in diversity, but on the nature of the facts giving rise to the cause. And in view of the savings of time and money — both to litigants and to the courts — that result from consolidation in one action of all claims arising out of a single injury, we see no reason why we should depart from the literal meaning of the Act. The few cases in point support our conclusion. Fematt v. City of Los Angeles, 196 F.Supp. 89 (S.D.Cal.1961); Hovland v. Fearnley & Eger, 110 F.Supp. 657 (E.D.Pa.1952). David Crystal, Inc. v. Cunard S.S. Co., 223 F.Supp. 273 (S.D.N.Y.), is not contra, since our result does not rest on the ancillary jurisdiction of federal courts, but directly upon the statute.
 
 
 12
 The company contends that plaintiff's claims against it are barred by the Longshoremen's Act, 33 U.S.C. § 901-950. Be that as it may, the matter does not affect the jurisdiction of the court below, for dismissal on such a ground would be on the merits. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939 (1946).
 
 III.
 
 
 Notes:
 
 
 [1]
 Though the contentions on appeal deal principally with unseaworthiness, the notice of appeal referred to all parts of the judgment below, including the dismissal of the negligence claims, and passing references in the briefs — particularly Reply Brief at 3 — continue to urge negligence upon us. Under the circumstances, we think it unduly harsh to hold that plaintiff's claims in negligence have been abandonedCf. Platis v. United States, 409 F.2d 1009 (10th Cir. 1969); Montgomery v. Marva Theaters, 218 F.2d 221 (4th Cir. 1954).
 
 
 HUFSTEDLER, Circuit Judge:
 
 13
 The parties argue the unseaworthiness issue as if it turned on the interpretation of the Extension Act, 46 U.S.C. § 740. We think, as did the District Court, that the controlling principles are not found in the Extension Act, but in general maritime law, but we read that law differently from the District Court.
 
 
 14
 The Constitution provides that the federal judicial power shall extend to "all Cases of admiralty and maritime Jurisdiction" (U.S.Const., art. III, § 2), but it has been left to Congress and to the courts to define that phrase. Section 9 of the Judiciary Act of 1789 (1 Stat. 76, as amended, 28 U.S.C. § 1333) provided little clarification of the constitutional grant, for it conferred on the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * *." And until 1948, the year of the Extension of Admiralty Jurisdiction Act, Congress passed no other acts directed to the question of admiralty jurisdiction. The task of charting the outlines of that jurisdiction was left to the federal courts.
 
 
 15
 The case law developed by the courts prior to 1948 indicated two primary sources of admiralty jurisdiction: a contract that was "maritime" in nature and a tort that occurred on navigable waters. (E. Benedict, Law of American Admiralty (1940) 2; G. Gilmore & C. Black, Law of Admiralty (1957) § 1-9.) A contract claim was within the admiralty jurisdiction if the contract related to the "navigation, business or commerce of the sea," while jurisdiction for a tort claim was a strict matter of "locality." (De Lovio v. Boit (C.C.D.Mass.1815) 7 Fed.Cas.pp. 418, 444, No. 3,776.)
 
 
 16
 Not all tort claims were restricted by the locality rule, however. An exception developed in certain instances in which the injured party possessed a maritime "status" or "relation." The oldest example is the seaman's ancient right to "maintenance and cure," a limited form of recovery granted to seamen injured in the course of their employment. Recovery is available regardless of whether the injury occurs on land or sea. (E. g., The Betsy Ross (9th Cir. 1944) 145 F.2d 688.) The Supreme Court recognized that maintenance and cure was an "important exception" to the generalization that maritime law "has not in general allowed recovery for personal injuries occurring on land." (O'Donnell v. Great Lakes Dredge & Dock Co. (1943) 318 U.S. 36, 41, 63 S.Ct. 488, 491, 87 L.Ed. 596.) The seaman's maritime status made the injury an appropriate subject to maritime jurisdiction, regardless of the locality of the injury. (318 U.S. at 42, 63 S.Ct. 488.)[1]
 
 
 17
 A second category of tort claim unaffected by the locality rule was recovery under the Jones Act. (41 Stat. 1007 (1920), 46 U.S.C. § 688.) The Act granted seamen an action for injuries arising out of maritime employment and resulting from the negligence of their employer or its employees. Lower courts at first reasoned that a claim under the Act, being a tort claim, was restricted by the locality rule. (E. g., Todahl v. Sudden & Christenson (9th Cir. 1925) 5 F.2d 462; see G. Robinson, Handbook of Admiralty Law in the United States (1939) 332-35 and cases cited therein.) But O'Donnell, supra, made it clear that the seaman's maritime status again created an exception to the locality rule:
 
 
 18
 "The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters." (318 U.S. at 42-43, 63 S.Ct. at 492.)
 
 
 19
 Thus, jurisdiction to hear a Jones Act tort claim depends only on whether the injured person was a seaman, and, if so, on whether he was acting within the scope of his maritime employment when so injured. (See also Senko v. LaCrosse Dredging Corp. (1957) 352 U.S. 370, 373, 77 S.Ct. 415, 1 L.Ed.2d 404.)[2]
 
 
 20
 Was the doctrine of unseaworthiness also subject to the maritime-status exception to the locality rule?
 
 
 21
 Before 1948 no court had occasion to decide whether the maritime-status exception to the locality rule applied to the unseaworthiness doctrine. The remedy was little used before the Supreme Court decided Mahnich v. Southern U. S. Co. (1944) 321 U.S. 96, 64 S.Ct. 455, 88 L. Ed. 561 and Seas Shipping Co. v. Sieracki (1946) 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. In those cases, granting relief respectively to an injured seaman and an injured longshoreman, the jurisdictional problem did not arise, because the injuries occurred on board a vessel. At that juncture the Extension of Admiralty Jurisdiction Act was passed. (62 Stat. 496 (1948), 46 U.S.C. § 740.) In pertinent part, that Act provides:
 
 
 22
 "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."
 
 
 23
 The Act's brief legislative history (1948 U.S.Code Cong.Serv., pp. 1898-1904) indicates that its purpose was to expand jurisdiction for those torts that had previously been "bounded by locality." No mention was made of unseaworthiness claims. The omission is not surprising because the impact of the cited Supreme Court decisions had probably not yet been felt. Those tort claims that were at the time not subject to the locality rule, because of the status exception, were specifically left unaffected by the Act.[3] It follows that if those claiming recovery for unseaworthiness would qualify for the status exception to the locality rule, admiralty's jurisdiction to hear those claims is unaffected by section 740. The section was meant to expand the locality rule, not to restrict jurisdiction over claims not governed by the locality rule.
 
 
 24
 This was the approach taken by the Second Circuit in Strika v. Netherlands Ministry of Traffic (2d Cir. 1950) 185 F.2d 555, cert. denied (1951) 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343. Strika was a longshoreman injured on the pier through the unseaworthiness of the ship's tackle. Judge Learned Hand, with Judge Frank concurring and Judge Swan dissenting, held that admiralty jurisdiction existed:
 
 
 25
 "[T]he defendant argues that since an action upon such an implied warranty is only a tort, the maritime law can have no jurisdiction over a breach of it occurring upon land; that being, of course, an accepted constitutional limitation upon maritime law. * * * [But] such a tort, arising as it does out of a maritime `status' or `relation', is cognizable by the maritime law whether it arises on sea or on land. * * *" (185 F.2d at 558.)
 
 
 26
 For the rule that maritime status can give rise to jurisdiction regardless of the locality of the tort, Judge Hand relied heavily on O'Donnell, supra, and Swanson v. Marra Bros. (1946) 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045, in which the Supreme Court said:
 
 
 27
 "The jurisdiction of admiralty over [a Jones Act] cause of action depends, not on the place where the injury is inflicted, * * * but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters. * * *" (328 U.S. at 4, 66 S.Ct. at 871.)
 
 
 28
 Judge Hand thought that Strika probably had admiralty jurisdiction on the basis of section 740 as well, "but we think that it was not necessary in order to support a recovery in this particular situation." (185 F.2d at 558.)
 
 
 29
 Other courts since Strika have expressly stated that admiralty jurisdiction to hear a claim of unseaworthiness for a land injury need not be predicated on section 740. (E. g., Hagans v. Ellerman & Bucknall S.S. Co. (E.D.Pa.1961) 196 F.Supp. 593, vacated on other grounds (3d Cir. 1963) 318 F.2d 563; Litwinowicz v. Weyerhaeuser S.S. Co. (E.D.Pa.1959) 179 F.Supp. 812; Di Paola v. International Terminal Operating Co. (S.D.N.Y.1968) 294 F.Supp. 736.) In many instances courts have adopted this conclusion by implication, for they address the jurisdictional and substantive issues of such a claim without discussion or even reference to section 740. (E. g., Spann v. Lauritzen (3d Cir.) 344 F.2d 204, cert. denied (1965) 382 U.S. 938, 86 S.Ct. 386, 15 L. Ed.2d 348; Partenweederei, MS Belgrano v. Weigel (9th Cir.) 299 F.2d 897, cert. denied (1962) 371 U.S. 830, 83 S.Ct. 49, 9 L.Ed.2d 67; Byrd v. American Export Isbrandsten Lines (E.D.Pa. 1969) 300 F.Supp. 1207; Olvera v. Michalos (S.D.Tex.1968) 307 F.Supp. 9.)[4] Admiralty jurisdiction exists whenever the petitioner has successfully pleaded all the elements of the tort: (1) that his work was "in the ship's service" and that the warranty of seaworthiness thereby extended to him (Gutierrez v. Waterman S.S. Corp. (1963) 373 U.S. 206, 214-215, 83 S.Ct. 1185, 10 L.Ed.2d 297), (2) that he was injured by a piece of equipment not reasonably fit for its intended use (Mitchell v. Trawler Racer, Inc. (1960) 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941), and (3) that the piece of equipment was a part of the ship's equipment or an appurtenant appliance. (Huff v. Matson Navigation Co. (9th Cir. 1964) 338 F.2d 205, cert. denied (1965) 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963). Such an unseaworthiness claim would necessarily possess the requisite maritime "status" or "relation," and admiralty jurisdiction would exist regardless of the locality of the injury. (See Massa v. C.A. Venezuelan Navigacion (2d Cir. 1962) 298 F.2d 239.)
 
 
 30
 Jurisdiction for an unseaworthiness claim can be based on section 740 in an appropriate situation, just as a Jones Act claim for a shipboard injury can be said to be based on the locality rule. Thus the Supreme Court in Gutierrez v. Waterman S.S. Corp., supra, appeared to find jurisdiction for the unseaworthiness claim both in section 740 and in the status rule of Strika. (See also Robillard v. A. L. Burbank & Co. (S.D.N.Y.1960) 186 F.Supp. 193.) But this does not mean that unseaworthiness jurisdiction is bounded by section 740 any more than that Jones Act jurisdiction is bounded by locality. A longshoreman's duties bring him into a zone of danger unique to maritime commerce (see Note, "Risk Distribution and Seaworthiness" (1966) 75 Yale L.J. 1174, 1186-87), and his injury, when incurred in the ship's service by ship's equipment, is an appropriate subject of maritime jurisdiction. Application of a uniform federal law gives both domestic and foreign participants in the shipping industry the ability to know in advance their rights and liabilities and gives to the injured longshoreman broad venue and the maritime lien, important devices when dealing with far-flung shipping interests. (See Pelaez, "Admiralty Tort Jurisdiction — The Last Barrier" (1968) 7 Duquesne L.Rev. 1, 29-36, 42.) When a petitioner has successfully pleaded the elements of an unseaworthiness claim, as has Gebhard, it is unnecessary to decide whether the injury was "caused by a vessel" within the meaning of section 740.
 
 
 31
 We turn now to the question of whether Gebhard successfully pleaded a prima facie case for unseaworthiness. As discussed, this question also answers the jurisdictional question. The allegations are sufficient to establish a prima facie case.
 
 
 32
 Gebhard must first establish that the scope of the warranty of seaworthiness extends to him and his duties. He was a "marine clerk longshoreman" whose duty station was at ship's side near a pier-based crane. His role in the loading operation was to position, in proper sequence, the straddle carriers under the crane. The containers left by the straddle carriers were then lifted directly onto the ship by crane. Gutierrez held that the "duty to provide a seaworthy ship and gear * * * applies to longshoremen unloading the ship whether they are standing aboard ship or on the pier." (373 U.S. at 215, 83 S.Ct. at 1191.)
 
 
 33
 Respondents wisely make no attempt to distinguish Gutierrez on the basis that there the ship was being unloaded. (See United States Lines Co. v. King (4th Cir. 1966) 363 F.2d 658, 661.) Their argument is that Gebhard's duties did not directly involve him in the loading operation, but were only preparation for loading. That narrow view is not supported by the authorities: A petitioner need be only an integral part of the loading process, and Gebhard was certainly that. (See Thompson v. Calmar S.S. Corp. (3d Cir.) 331 F.2d 657, cert. denied (1964) 379 U.S. 913, 85 S.Ct. 259, 13 L.Ed.2d 184; Hagans v. Ellerman & Bucknall S.S. Co. (3d Cir. 1963) 318 F.2d 563, 571-572; Byrd v. American Export Isbrandtsen Lines, supra; Litwinowicz v. Weyerhaeuser S.S. Co., supra, 179 F.Supp. at 817-818.) His duties were comparable to those of the longshoremen in Pope & Talbot, Inc. v. Cordray (9th Cir. 1958) 258 F.2d 214, whose role in the unloading process was to supervise the moving of the ship's cargo from ship's side to its place of rest on the pier. (258 F.2d at 217-218 nn. 2 and 3.)
 
 
 34
 "We hold that the duty of providing a seaworthy ship and gear at the time of this accident extended to the appellee, whether or not appellee was on board the ship or on the dock. [The accident occurred during a brief visit on board.] The test is, what was the nature of his work? He was performing a service for the ship in the discharge of its cargo. His employer was under contract with the shipowner to take the cargo from the shipside and to put it in a place of storage, and appellee was engaged in the performance of this work. The appellee's work was the work of a longshoreman and he was entitled to seaworthy gear while he was performing his services." (258 F.2d at 217-218.)
 
 
 35
 Respondents rely heavily on Partenweederei, MS Belgrano v. Weigel, supra, wherein we reversed an award for unseaworthiness on the ground that the petitioner had failed to prove that his work was the type of work traditionally done by seamen. Weigel was a tractor driver, whose job it was to push and pull railroad cars loaded with cargo to a point on a spur track where the cargo could be reached by the ship's gear. His services were performed solely on the pier. The respondent presented expert testimony at trial that seamen did not traditionally perform that type of work. Because Weigel failed to present any contrary proof, we held that he had failed to meet his burden on that issue as a matter of law.
 
 
 36
 Gutierrez has put into question at least parts of Partenweederei. The circuit opinion reversed by Gutierrez placed considerable reliance on Partenweederei (Waterman S.S. Corp. v. Gutierrez (1st Cir. 1962) 301 F.2d 415, 417), and Gutierrez' duties — like Weigel's and Gebhard's — never took him on board ship (301 F.2d at 417), a factor that the Supreme Court did not think worthy of mention. Without any discussion of Gutierrez' particular duties, the Supreme Court squarely held that "longshoremen unloading the ship" are covered by the doctrine of unseaworthiness. That holding eliminates the need for the case-by-case historical determination suggested by Partenweederei.
 
 
 37
 In any event, Partenweederei is distinguishable from our case in at least two respects: First, Gebhard was one stage closer to the ship than was Weigel in the loading operation. Weigel was employed to bring the cargo to ship's side; Gebhard was employed to meet that cargo and to place it for loading. (Cf. Pope & Talbot, Inc. v. Cordray, supra.) Second, Partenweederei was decided on the basis of a failure of proof after trial. The present record is sufficient to establish prima facie that Gebhard was in the ship's service. (See also Olvera v. Michalos, supra.)
 
 
 38
 The second element of the unseaworthiness claim is that the injury be caused by a piece of the ship's equipment or an appurtenant appliance. Controlling on this issue are Huff v. Matson Navigation Co., supra; Deffes v. Federal Barge Lines (5th Cir.) 361 F.2d 422, cert. denied Continental Grain Co. v. Deffes, (1966) 385 U.S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433; and Spann v. Lauritzen, supra, in each of which equipment unattached to the ship and standing on the pier was held appurtenant to the ship as a necessary and integral part of the loading or unloading process. (See also Olvera v. Michalos, supra.)[5] Although the landward extension of unseaworthiness has been criticized (e. g., Skibinski v. Waterman S.S. Corp. (2d Cir. 1966) 360 F.2d 539, 543 (Judge Friendly dissenting), cert. denied (1967) 387 U.S. 921, 87 S.Ct. 2027, 18 L.Ed.2d 975), the overall result has not been unfortunate. Liability is generally shifted back to the stevedoring company through indemnity suits, and that company then has an incentive to improve its loading and unloading equipment. (See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co. (1964) 376 U.S. 315, 324, 84 S.Ct. 748, 11 L.Ed.2d 732; Proudfoot, "`The Tar Baby': Maritime Personal Injury Indemnity Actions" (1968) 20 Stan.L.Rev. 423, 445-46.)
 
 
 39
 The third element of the tort is that the equipment used was not reasonably fit for its intended use. Gebhard deserves a trial on this issue, and we therefore reverse the District Court's dismissal of the action.
 
 
 40
 We conclude only that admiralty jurisdiction exists. We express no opinion about ultimate liability. A determination of liability can be made only upon a full development of all the facts. In addressing the jurisdictional question, however, we assume as true the facts alleged by Gebhard. Those facts are sufficient to give jurisdiction to a court of admiralty to explore the claim of unseaworthiness.
 
 
 
 Notes:
 
 
 [1]
 There is some suggestion inO'Donnell that maintenance and cure is more of a contractual remedy than a tort claim. See also G. Robinson, Handbook of Admiralty Law in the United States (1939) 293 and cases cited therein. Jones Act claims are clearly based on admiralty tort jurisdiction, however. See note 2 infra.
 
 
 [2]
 The Jones Act is not an example of admiralty contract jurisdiction. This is made clear by the early lower court cases restricting the act to the locality rule and by International Stevedoring Co. v. Haverty (1926) 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 holding that a longshoreman engaged in the maritime work of stowing cargo was a "seaman" entitled to Jones Act recovery. There was, of course, no contract between the shipowner and the longshoremanSee also Uravic v. F. Jarka Co. (1931) 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312. The Longshoremen's and Harbor Workers' Compensation Act of 1927 (44 Stat. 1424, as amended, 33 U.S.C. §§ 901-950) later effectively eliminated longshoremen from Jones Act coverage. See G. Gilmore & C. Black, supra, § 6-21.
 
 
 [3]
 "The legislation is not intended to affect existing rights of seamen against their vessels or against private companies who operate Government-owned vessels, or to affect remedies which may exist against other parties involved by existing law in any appropriate forum." S.Rep.No.1593, 1948 U.S.Code Cong.Serv., p. 1899See Henz v. United States (N.D.Cal.1949) 9 F.R.D. 291, in which a seaman's suit for maintenance and cure, unseaworthiness, and relief under the Jones Act was held not barred by the six-months statute of limitations set forth in the latter half of section 740 for suits against the United States.
 
 
 [4]
 See also Black, "Admiralty Jurisdiction: Critique and Suggestions" (1950) 50 Colum.L.Rev. 259, 269: "Side by side with the Jones Act remedy, the seaman enjoys his right to indemnity for injuries suffered in consequence of the unseaworthiness of the vessel on which he serves. Since this is a right arising under the `general' maritime law and since no special jurisdictional provisions have been made for it, it has fallen under the catchall provision of the Judicial Code * * *." (Footnote omitted.)
 
 
 [5]
 Nacirema Operating Co. v. Johnson (1969) 396 U.S. 212, 223, 90 S.Ct. 347, 354, 24 L.Ed.2d 371 stated that "longshoremen injured on a pier by pier-based equipment would still remain outside the [Extension] Act." We do not read this, however, as either denying Gebhard jurisdiction or as overruling cases such asSpann. The Court's dictum was almost a casual observation in an opinion devoted to a discussion of the application of the Longshoremen's and Harbor Workers' Compensation Act. Even if we were to give it the full weight of a holding, however, it relates only to a jurisdictional claim based on section 740, not to a claim based on the status exception to the locality rule. Section 740 was not the basis for jurisdiction in Spann. Nor is there any indication that the Court was referring to the substantive elements of an unseaworthiness claim.
 
 
 
 41
 HUFSTEDLER, Circuit Judge (dissenting in part):
 
 
 42
 I would not reverse the district court on Gebhard's negligence claims, for those claims are not in issue on this appeal. The sole question briefed and argued orally before this court was jurisdiction for the unseaworthiness claim.[1] The heart of Gebhard's suit is his claim of unseaworthiness, and he has apparently decided to abandon whatever other causes of action he might have had. I am reluctant to address myself to questions not pressed by the parties. Moreover, Nacirema Operating Co. v. Johnson (1969) 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 has raised questions about the scope of section 740,[2] questions that are not addressed in this court's handling of the negligence claims. Consequently, I respectfully dissent from the court's resolution of those claims.
 
 
 
 Notes:
 
 
 [1]
 Gebhard's brief states the "Question in the Case" as follows: "The question in this case is whether a longshoreman in the position of Marvin W. Gebhard may hold the ship in whose loading operation he was engaged upon a warranty of seaworthiness." Appellees' "Statement of Case" reads: "The sole question on appeal is whether Appellant has established jurisdiction of the District Court by showing that the shipowner may be held on a warranty of seaworthiness to Appellant."
 
 
 [2]
 See part III, note 5, of the opinion of the court.
 
 
 
 43
 EUGENE A. WRIGHT, Circuit Judge (dissenting from Part III):
 
 
 44
 I disagree with the Court's treatment of unseaworthiness jurisdiction.
 
 
 45
 Two things, I suppose, are common ground here. First, that unseaworthiness is a creature of maritime law, and that no cause of action for unseaworthiness will lie when a basis for admiralty jurisdiction is lacking. I do not understand the majority to question this proposition. Second, that under the traditional rules first enunciated in DeLovio v. Boit, 7 Fed.Cas. pp. 418, 444, No. 3,776 (C.C.D.Mass.1815), there is in this case no basis for admiralty jurisdiction. For under those rules, the jurisdiction of the admiral in tort is limited to injuries occurring on navigable waters. Here the injury took place on a pier, traditionally considered an extension of the land. Rodrigue v. Aetna Casualty and Surety Co., 395 U.S. 352, 360, 366, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); Swanson v. Marra Bros., Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); T. Smith & Son v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928). Nor does plaintiff seek to recover on the basis of any contract, maritime or otherwise. Cf. Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79 (4th Cir. 1967).
 
 
 46
 Plaintiff's counsel apparently recognized the futility of attempting to bring himself within the traditional bounds of admiralty jurisdiction. He has based his claim of jurisdiction here solely on the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C. § 740. By that act, Congress sought to mitigate some of the rigors which the strict locality rule had imposed, and conferred jurisdiction on federal courts to hear cases where the injury is "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."
 
 
 47
 In the court below, and at argument here, plaintiff's counsel relied on some of the rather broad language in Gutierrez v. Waterman S.S.Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1962), as conferring jurisdiction under the Extension Act. But in the interim between argument and decision, the Supreme Court decided Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969), and once again construed the Extension Act.
 
 
 48
 The issue was whether the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C. §§ 901-950, should be extended to cover longshoremen injured on a pier. The argument was that the Longshoremen's Act had been intended to reach to the limits of admiralty jurisdiction, and that the Extension Act as interpreted in Gutierrez v. Waterman S.S. Corp., supra, had made longshoremen injured on a pier subject to admiralty. The Supreme Court rejected the contention:
 
 
 49
 "There is much to be said for uniform treatment of longshoremen injured while loading or unloading a ship. But even construing the Extension Act to amend the Longshoremen's Act would not effect this result, since longshoremen injured on a pier by pier-based equipment would still remain outside the Act. And construing the Longshoremen's Act to coincide with the limits of admiralty jurisdiction — whatever they may be and however they may change — simply replaces one line with another whose uncertain contours can only perpetuate on the landward side of the Jensen line, the same confusion which previously existed on the seaward side."
 
 
 50
 Justice White's observation could not have been casual or unintended. For the court below, whose judgment the Supreme Court reversed, had as an alternate ground of decision relied on the Extension Act to expand coverage under the Longshoremen's Act. Marine Stevedoring Corp. v. Oosting, 398 F.2d 900, 906 (4th Cir. 1968). Judge Sobeloff suggested that the alternative to so construing the Longshoremen's Act was the toleration of a series of "harsh and incongruous" differences in treatment of similarly-situated harbor workers. Id. at 907. The point of Justice White's remark, then, was that even were the Longshoremen's Act construed as incorporating the Extension Act, the incongruities feared by the Fourth Circuit would not be lessened. Uniform treatment of longshoremen's injuries could not be achieved, since even under the Extension Act injuries on a pier resulting from pier-based equipment are not cognizable in admiralty — even though they occur in connection with the loading or unloading of a ship. Justice White's construction of the Extension Act was thus central to his rejection of the reasoning below.
 
 
 51
 I should have thought the Supreme Court's construction of the Extension Act sufficient to dispose of plaintiff's unseaworthiness claim. For it is conceded that the injury here occurred "on a pier." And the only equipment alleged to be not reasonably fit for its intended use is "pier-based" — namely, the straddle carriers.[1]
 
 
 52
 Indeed, the majority implicitly concedes the inapplicability of the Extension Act — the only basis for jurisdiction asserted in this court or in the court below — by declining to rely on it. Instead, the majority enunciates the novel doctrine that a maritime "status" alone is a sufficient basis for admiralty jurisdiction — independent both of the traditional rules and of the Extension Act. I think it can be shown that none of the cases relied on provide reasoned support for the majority's theory
 
 
 53
 The majority first claims, as an instance of "status" jurisdiction in admiralty, the seaman's ancient right to maintenance and cure. But ever since it was introduced into our law by Justice Story in Harden v. Gordon, 11 Fed. Cas. p. 480, No. 6,047 (C.C.D.Me.1823), the right to maintenance and cure has been thought to arise ex contractu. 11 Fed.Cas. at p. 481. The shipowner's liability for maintenance and cure for injuries ashore thus represents no exception — "status" or otherwise — to the traditional rules, but merely an application of the doctrine that admiralty jurisdiction over contracts exists, without regard to locality, whenever the contract is maritime in nature. DeLovio v. Boit, supra; Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1871).
 
 
 54
 True, liability for maintenance and cure rests on the policy of the law, rather than on any consent of the shipowner. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). But the obligation is thereby no less contractual in origin, any more than the obligation not to enforce a penalty for breach of contract ceases to be contractual because it rests on social principle rather than the whim of the parties.
 
 
 55
 The Supreme Court has consistently recognized the contractual basis of maintenance and cure. Three years before Sieracki, Mr. Justice Rutledge himself stated that the obligation was "an implied provision in contracts of marine employment" and was "[c]reated * * with the contract of employment." Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943). Ten years later, in Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), Mr. Justice Black reiterated the point, discussing the case of a stevedore injured on shipboard:
 
 
 56
 "* * * Hawn was not a crew member. He was not employed by the ship. The ship's crew were not his fellow servants. Having no contract of employment with the shipowner, he was not entitled to maintenance and cure."
 
 
 57
 346 U.S. at 413, 74 S.Ct. at 207 (emphasis added). Accord, Lauritzen v. Larsen, 345 U.S. 571, 588, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). And the teaching of the Supreme Court has been consistently followed by lower federal courts, including this one. Clinton v. Joshua Hendy Corp., 264 F.2d 329, 334 (9th Cir. 1959); Medina v. Erickson, 226 F.2d 475, 484 (9th Cir. 1955); McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968); Turner v. Wilson Line, 242 F.2d 414, 417 (1st Cir. 1957).
 
 
 58
 Second, since maintenance and cure rests on contract, it is clear that Chief Justice Stone's opinion in O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943), which relied exclusively on the analogy to maintenance and cure in justifying recovery under the Jones Act for seamen's injuries ashore, should be taken to hold that Congress in passing the Jones Act relied on its constitutional power over maritime contracts of employment. "Since a workmen's compensation act combines elements of both tort and contract, Congress need not [test] coverage by locality alone." Nacirema Operating Co. v. Johnson, 396 U.S. 212, 215 n. 7, 90 S.Ct. 347, 24 L.Ed. 2d 371 (1969). Hence the jurisdictional basis of the Jones Act is contractual, although the form of liability imposed might be said to be tortious in the sense that recovery is predicated on the shipowner's negligence.
 
 
 59
 The contractual basis of Jones Act jurisdiction appears not only from the face of the Act, which covers only injuries received by a seaman "in the course of [his] employment." It appears also in the well-settled rule that recovery may be had only against the seaman's employer. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 787 n. 6, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Paduano v. Yamashita Kisen Kabushiki Kaisha, 221 F.2d 615 (2d Cir. 1955); Southern Shell Fish Co. v. Plaisance, 196 F.2d 312 (5th Cir. 1952); Gilmore & Black, Admiralty § 6-21 (1957). And there is nothing to the contrary in International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926) or Uravic v. F. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312 (1931), cited by the majority. True, in those cases there was "no contract between the shipowner and the longshoreman." But recovery was not had from the shipowner; it was had from the stevedoring company whose employee the injured longshoreman was. Hence there was ample contractual basis to support a Jones Act recovery.[2]
 
 
 60
 Third, even if the Jones Act is said to rest, not on congressional power over maritime contracts, but on the general congressional power to modify maritime law, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Panama R.R. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924), the Act provides no support for a judicial abrogation of traditional admiralty rules. That was the fallacy of Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir. 1950), the case principally relied upon by the majority and the only appellate holding prior to this one to enunciate the majority's theory.
 
 
 61
 Judge Hand, speaking for himself and Judge Frank, began by assuming that unseaworthiness was a tort. Since the plaintiff in Strika had been injured ashore, Judge Hand conceded that there would have been no admiralty jurisdiction under the traditional rules. "We should have found this a serious obstacle [to jurisdiction]," he continues,
 
 
 62
 "were it not for O'Donnell v. Great Lakes Dredge & Dock Co., supra, and the ratio decidendi of Swanson v. Marra Brothers, Inc., supra; but those decisions appear to us to settle it that such a tort, arising as it does out of a maritime `status' or `relation', is cognizable by the maritime law whether it arises on sea or on land. For it seems to us to follow, if Congress has power to impose liabilities in favor of seamen for lapses of care on shore, that Congress at least would have power to impose a similar liability when the lapse is in furnishing a seaworthy ship. It is true that Congress has not intervened as to seaworthiness; yet there is no more reason to circumscribe more narrowly the duty, which The Osceola, supra, established as part of the maritime law, than the Constitution circumscribes the power of Congress, for both in the end are based upon the same provision." 185 F.2d at 558.
 
 
 63
 The opinion in Strika is entitled to more than usual weight, as having behind it the authority of a great judge. But even Homer nods, and the quoted passage, on which the opinion rests, is no less a non sequitur because it seemed convincing to Judge Hand.
 
 
 64
 It may be true, as Judge Hand suggests, that O'Donnell held the Article III grant of admiralty and maritime jurisdiction to be somewhat broader than the traditional judge-made rules. No doubt in the interval between traditional limits and the constitutional boundary, Congress can act to extend admiralty jurisdiction. Perhaps the Jones Act is an instance. The Extension Act certainly is. But from this congressional power to extend admiralty jurisdiction it does not follow that a court — especially an inferior court — can or should depart from well-settled rules and expand its jurisdiction to the very brink of the constitutional limits.
 
 
 65
 The error of the opinion in Strika, an error now perpetuated by this court, was to overlook the well-established and fundamental distinction between constitutional grants of jurisdiction and traditional limits on its exercise, whether judge-made or statutory. Romero v. International Terminal Operating Co., 358 U.S. 354, 379-380, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959); National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., 337 U.S. 582, 613, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (concurring opinion); 1 J. Moore, Federal Practice ¶ 0.60[2]. Federal jurisdiction has historically, and wisely, been restricted to a range much narrower than the Constitution permits. No one suggests that the rules in Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (complete diversity), or in Oakley v. Goodnow, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61 (1886) (no removal though assignment is merely colorable), or in Joy v. City of St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906) (no federal question merely because land is under a federal patent), or in Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (federal question must be in complaint, not answer), or in City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (realignment of parties), are required by the Constitution, or that Congress could not alter in an instant these judge-made doctrines. But by the same token no one would suggest that a Court of Appeals could or should depart from settled law merely because Congress could do so if it chose. No more may settled rules of admiralty jurisdiction now be altered by a court.
 
 
 66
 Besides Strika, the majority cites only three District Court cases. Di Paola v. International Terminal Operating Co., 294 F.Supp. 736 (S.D.N.Y.1968), is from the Second Circuit, and hence can add no weight to the Court of Appeals' holding in Strika. In any event, the decision is hardly persuasive since jurisdiction was held to be lacking.
 
 
 67
 Hagans v. Ellerman & Bucknall S.S. Co., 196 F.Supp. 593 (E.D.Pa.1961), and Litwinowicz v. Weyerhaeuser S.S. Co., 179 F.Supp. 812 (E.D.Pa.1959), did rely on Strika, but in both those cases, as in Strika itself, there was jurisdiction under the Extension Act, apart from any theories as to "status." In Hagans, the defective equipment was a cargo container, clearly vessel-based rather than pier-based; in Strika and Litwinowicz, the accident resulted from misattachment of the ship's winches. The instant case, it should be emphasized, is the first to apply the "status" doctrine to a situation outside the purview of the Extension Act.[3]
 
 
 68
 Finally, I can see no compelling reason of social policy to justify the majority's departure from settled jurisdictional rules. Plaintiff here is entitled to compensation under the California Workmen's Compensation Act, Cal.Labor Code § 3201 et seq. We are not entitled to assume that such compensation is niggardly or unjust.
 
 
 69
 Nor can the result be explained by modern theories of risk distribution. Whatever may have been the validity of the assumption in Sieracki that the shipowner's absolute liability for loading-related injuries was justified because of his ability to pass on to others the necessary costs of the shipping business, that assumption has now been eroded by Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1953) and Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). For under the latter decisions the shipowner as a practical matter pays none of the costs of the longshoreman's injury, but passes it on to the stevedoring company. The effect is to subvert entirely the principle that ultimate liability for industrial injury should rest with the dominant entity in the enterprise. It is the equivalent, in products liability terms, of absolving General Motors from responsibility for automobile defects, and putting the full burden on the local car dealer. Where this result is compelled by precedent we are of course bound to achieve it. But under the circumstances, I think both precedent and sound policy militate against the unlimited expansion of jurisdiction over unseaworthiness.
 
 
 
 Notes:
 
 
 [1]
 There is, of course, no obstacle inNacirema to jurisdiction over the plaintiff's claim for negligence. Cf. Part I, supra. For in legal contemplation an injury that is the product of negligence does not result from the physical object which inflicts it but from the negligent act or omission which was its proximate cause. Hence insofar as plaintiff's claim of negligence is concerned, he cannot be said to have been injured by pier-based equipment; his cause of action rests rather on the shipowner's allegedly negligent failure to alter the conditions of the loading operation.
 The same cannot be said of the claim for unseaworthiness. For such a cause of action rests not on any act or omission of the shipowner, but simply on the fact that a particular piece of equipment was not reasonably fit for its intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Hence when that piece of equipment is "pier-based," Nacirema stands as a bar to jurisdiction.
 
 
 [2]
 The cases would provide no support for the majority's theory even had they permitted recovery by a longshoreman directly against the shipowner. For Congress might constitutionally exercise its authority over maritime contracts to define the rights of two parties not directly linked by contract, provided that each of the parties involved was linked by contract to a third, and that both of the latter contracts were maritime. Thus an exercise of congressional jurisdiction over the shipowner-stevedore contract and the stevedore-longshoreman contract — both maritime in nature — could justify a direct recovery by the longshoreman against the shipowner
 
 
 [3]
 Other cases which have permitted recovery for unseaworthiness without reference to jurisdiction based on "status" provide slight support for the majority's conclusion. For, with the exception of Spann v. Lauritzen, 344 F.2d 204 (3d Cir. 1965), and Byrd v. American Export Isbrandtsen Lines, 300 F.Supp. 1207 (E.D.Pa.1969), which followedSpann, none of them involved any violation of the limits imposed by the traditional jurisdictional rules and the Extension Act. Thus in Huff v. Matson Navigation Co., 338 F.2d 205 (9th Cir. 1964) and Deffes v. Federal Barge Lines, 361 F.2d 422 (5th Cir. 1966) there was no need to consider jurisdiction at all, the injuries having occurred on board a vessel. In Gutierrez v. Waterman S.S. Co., supra; Thompson v. Calmar S.S. Corp., 331 F.2d 657 (3d Cir. 1964); American Export Lines v. Revel, 266 F.2d 82 (4th Cir. 1959); Hagans v. Farrell Lines, 237 F.2d 477 (3d Cir. 1956); and Robillard v. A. L. Burbank & Co., 186 F. Supp. 193 (S.D.N.Y.1960), all of which relied on the Extension Act, the injury was on a pier, but the injury-causing equipment could not reasonably have been said to be pier-based: in Gutierrez, Revel, and Robillard, it was cargo or cargo containers; in Thompson and Hagans, a ship's winch. Jurisdiction was not discussed in Partenweederei, MS Belgrano v. Weigel, 299 F.2d 897 (9th Cir. 1962), but was crystal-clear under the Extension Act, plaintiff having been struck by the ship's boom.